**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MARK ANTHONY PALLOTTINO,

Plaintiff,

vs. 1:25-cv-644-DHU-KRS

LOS SUENOS DE ALBUQUERQUE HOMEOWNERS ASSOCIATION; JAMES CLARK JR.; KRISTEN CUSHMAN; TERRY COMBS; HOMEOWNERS ASSOCIATION MANAGEMENT COMPANY ("HOAMCO"); ANGELINA GARCIA; GARY WISEMAN; JUSTIN RODRIQUEZ; RESNICK & LOUIS P.C. LAW FIRM; MICHAEL S. RUMAC; and JUSTIN D. GOODMAN,

Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Currently before the Court are three motions referred to the undersigned for report and recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B). *See* (Doc. 47). The motions include: (1) a Motion To Dismiss, filed by the Law Firm Defendants[1] (Doc. 39); (2) a Motion To Join the Law Firm Defendants' Motion to Dismiss, filed by the Los Suenos De Albuquerque Homeowners Association ("HOA") Defendants[2] (Doc. 46); and (3) a Motion To Dismiss For Insufficiency of Service of Process, filed by the HOA Defendants (Doc. 44). In the course of its discussion of the three referred motions, the Court will also address several procedural motions that are related to the referred motions.[3] For the reasons that follow, the undersigned recommends that the Law Firm

[1] The Law Firm Defendants include the Resnick & Louis P.C. Law Firm, and Attorneys Michael S. Rumac and Justin D. Goodman.

[2] The HOA Defendants include the HOA; three individuals associated with the HOA (James Clark, Kristen Cushman, and Terry Combs); the Homeowners Association Management Company ("HOAMCO"); and three individual associated with HOAMCO (Angelina Garcia, Gary Wiseman, and Justin Rodriguez).

[3] To the extent that the procedural motions could be construed as seeking dispositive relief, the Court's rulings on them should be treated as a proposed finding and recommended disposition.

Defendants' Rule 12(b)(6) Motion To Dismiss be granted, that the HOA Defendants' Motion to Join be denied, and that the HOA Defendants' Motion to Dismiss for Insufficiency of Service of Process be granted in part and denied in part.

## I. Introduction

Plaintiff Mark Anthony Pallottino alleges he is a disabled individual with an orthopedic impairment caused by a degenerative spinal disease. Due to his impairment, Plaintiff alleges that his mobility is limited, requiring him to use supports such as a cane and a power wheelchair to move around. *See* (Doc. 14 at 50 (Letter to the HOA from an organization called Disability Rights New Mexico)). This case arises from an ongoing dispute between the HOA Defendants and Plaintiff, who is a member of the HOA, regarding Plaintiff's complaints about his inability to access a community park.

"At the outset, it is important to note [Plaintiff's] pro se status," and the well-worn rule that "'a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.'" *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted)). The Court, "however, will not supply additional factual allegations to round out [ ] [P]laintiff's complaint or construct a legal theory on [ ] [P]laintiff's behalf." *Id.* (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). For purposes of this report and recommendation, the Court accepts as true the allegations of the Amended Complaint (Doc. 14), provided they are "well-pleaded … , as distinguished from conclusory," and "liberally construes" those well-pleaded allegations with "all reasonable inferences in favor of" Plaintiff as the non-moving party. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

In addition to Plaintiff's well-pleaded allegations, the Court has taken into account the 400+ pages of documents Plaintiff has attached to the Amended Complaint. Generally, a motion to dismiss challenging the legal sufficiency of the complaint—such as the motion filed by the Law Firm Defendants—is restricted to an analysis of "only the complaint itself." *Id.* at 1103. "A district court may, however, consider documents outside the complaint if they fall under one of "the three limited exceptions" to the general rule against considering such documents: "(i) documents that the complaint incorporates by reference; (ii) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (iii) matters of which a court may take judicial notice." *Mohon v. Agentra LLC,* 400 F. Supp. 3d 1189, 1217 (D.N.M. 2019) (internal quotation marks and citations omitted).

Many of the exhibits attached to the Amended Complaint are documents from the state court record, which are subject to judicial notice. *See United States v. Ahidley*, 486 F.3d 1184, 1192 (10th Cir. 2007) (a court "may exercise [its] discretion to take judicial notice of publicly filed records in … certain other courts concerning matters that bear directly upon the disposition of the case at hand"). It is unlikely, however, that the non-court documents attached to the Amended Complaint satisfy either of the other two categories that the Court may rely on for purposes of a ruling in favor of the moving defendants. As the party opposing dismissal, however, Plaintiff has more flexibility than the moving defendants in relying on matters outside the complaint. S*ee, e.g., Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (stating that the plaintiff "may elaborate on his factual allegations [by referring to matters outside the complaint] so long as the new elaborations are consistent with the pleadings").[4] Therefore, the Court has reviewed and

[4] *See also Thomas v. Guardsmark, Inc*., 381 F.3d 701, 704 (7th Cir. 2004) ("a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove"); *Roe v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1007 (S.D. Ind. 2007) ("[s]uch documents are not evidence, but they provide

considered even the non-court documents submitted by Plaintiff as general background information and in an effort to better understand Plaintiff's claims and legal arguments in the case.

## II. Background

### A. State Court Proceedings

Judicial proceedings over Plaintiff's access claims appear to have begun in March 2023, when Plaintiff filed a lawsuit in New Mexico state court against the HOA and Defendant Clark. (Doc. 14 ¶ 25). Defendant Clark apparently is Plaintiff's neighbor, *see, e.g.*, (Doc. 14 at 358, 360), but Plaintiff alleges he is also a "[f]ormer Vice President and director of" the HOA (Doc. 14 ¶ 4), a factual assertion that forms the basis for Plaintiff's claims against the Law Firm Defendants, who represented the HOA and Clark in the state court proceedings. *See* (Doc. 39 at 7).[5]

Plaintiff's complaint in the original state court action was dismissed without prejudice and with leave to file an amended complaint. (*Id.* at 5 (citing (Doc. 14 ¶ 25)). Instead of filing an amended complaint, Plaintiff initiated a second lawsuit against the same two defendants. *See* (*id.* (citing Doc. 14 ¶ 27)); *see also* (Doc. 14 at 274-84; *id.* at 395-404 (duplicate copies of complaint in second state court lawsuit)). The complaint in the second lawsuit alleged claims similar to the first lawsuit relating to Plaintiff's access to the community park, as well as alleged harassment and retaliation allegedly suffered by Plaintiff as a result of having complained about his lack of access.

a way for a plaintiff to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate").

[5] According to Plaintiff, one or more of the HOA Defendants lied in the state court proceeding about whether Defendant Clark ever served as a Director of the HOA, which lie was endorsed and enabled by the Law Firm Defendants and repeated by Attorney Goodman during one or more hearings before the state court judge. *See* (Doc. 14 ¶¶ 20-21, 28, 48-49); *see also* (*id*. at 309-31 (Exhibit 126, titled "Perjury by Defendants James Clark, Jr., and Angelina Garcia")); *id*. at 332-37 (Exhibit 127, titled "Obstruction Of Justice, Fraud Upon The Court By An Officer Of Court")).

In March 2024, the state court dismissed the original state court complaint in the second lawsuit[6] with prejudice as to all claims *except* Plaintiff's breach of contract claims, which were dismissed without prejudice and with leave to amend. *See* (Doc. 39 at 6); (Doc. 39-2 at 2 (Order Granting Motion To Dismiss)). Plaintiff filed an amended state court complaint on April 4, 2024, in which he re-alleged his breach of contract claims against the HOA and Clark. The breach of contract claims were based on the HOA governing documents and a 2019 settlement agreement between Plaintiff and the HOA. *See* (Doc. 14 ¶ 37); (*id.* at 285-91). The HOA and Clark filed a motion to dismiss the amended state court complaint, but the state court denied the motion by order entered on August 15, 2024. (Doc. 14 ¶ 46). Several months later, the HOA and Clark filed a motion for summary judgment, which the state court granted by order dated March 10, 2025. *See* (*id.* ¶ 53); (*id.* at 426-30). The order only dismissed Plaintiff's breach of contract claim based on the 2019 settlement agreement, however, explaining that the defendants' motion had not addressed Plaintiff's other breach of contract claim based on the HOA governing documents. (*Id.* at 427).

On March 20, 2025, Plaintiff filed a motion for reconsideration of the state court's summary judgment order. *See* (*id.* ¶ 54; *id.* at 434-36). Thereafter, on July 8, 2025, Plaintiff filed the present lawsuit. The state court denied the motion for reconsideration on August 14, 2025. *See* (*id.* at 437-38). Plaintiff filed an appeal from the state court's summary judgment orders (Doc. 39-3), which appeal was denied on November 12, 2025 (Doc. 71). The Court of Appeals of New Mexico ruled that it lacked appellate jurisdiction to consider the appeal because Plaintiff's claims based on the HOA governing documents remained pending before the trial court. *See* (*id.* ¶ 10). It appears from recent notices filed by Plaintiff in this matter that, following the Court of Appeals'

[6] Going forward, all references to the state court lawsuit will be to the second lawsuit filed by Plaintiff. Similarly, all references to court papers in the state court proceedings are to filings made or orders entered in the second lawsuit.

ruling remanding the case for lack of a final judgment, the HOA Defendants alerted the state trial court to Plaintiff's federal lawsuit and the present motions that had been filed in these proceedings, and the state trial court then stayed the proceedings on Plaintiff's remaining breach of contract claim pending resolution of the present motions. *See* (Docs. 87, 88).

### B. The Present Lawsuit

Plaintiff's federal lawsuit names the HOA and Clark, as well as the following additional defendants:[7] two individuals who, like Clark, are alleged to be associated with the HOA (Defendants Cushman, and Combs); the management company for the HOA, which Plaintiff identifies as HOAMCO;[8] three individuals associated with the HOA management company (Defendants Garcia, Wiseman, and Rodriguez); the Resnick Law Firm; and two attorneys[9] from the Resnick Law Firm (Defendants Rumac and Goodman). Generally speaking, Plaintiff alleges that the HOA refused to provide a reasonable modification of a pathway that would allow Plaintiff

---

[7] Prior to filing this lawsuit, Plaintiff may have tried unsuccessfully to add at least some of his claims in this lawsuit against the additional defendants to the state court proceeding. *See, e.g.,* (Doc. 14 at 434, 435 (Plaintiff's Motion for Reconsideration, ¶ 23 (stating that Plaintiff filed motions on November 25th 2024 … addressing Fraud Upon the Court by Attorney Justin D. Goodman and Perjury by Defendant James Clark"); *id.* at 339-40 (Plaintiff's motion to join Gary Wiseman, HOAMCO Compliance Officer); *id.* at 435 (Plaintiff's Motion for Reconsideration, ¶ 28 (stating that "Plaintiff filed a Motion for Joinder to add HOAMCO as new Defendants [on] January 28th 2025"))). The state trial court appears to have declined to consider Plaintiff's arguments that the HOA, Clark, and the Law Firm Defendants had committed "perjury" and "fraud on the court" as outside the scope of the proceedings, *see, e.g.,* (Doc. 14 at 431-32) (state court order stating that Plaintiff's disciplinary complaint against the Law Firm Defendants was "irrelevant to this civil action," was not a matter "before this Court," and "provide[d] no basis for relief in this action,")), and/or because they raised a "dispute of fact" or issue regarding "a witnesses' credibility" more appropriately addressed during a trial, *see* (*id.* at 432 (discussing "Plaintiff's challenges to the veracity of Defendant Clark's factual assertions").

[8] The HOA Defendants state that HOAMCO is a trade name, and that the correct name of the HOA management company is Community Asset Management, LLC, as shown on Exhibit B to their motion to dismiss. *See* (Doc. 44 at 4, 9-10). They contend that, if Plaintiff's claims survive dismissal, he must file an amended complaint. There is no need for that, however. If necessary, the parties may correct the misnomer by filing an agreed motion to amend the case caption to substitute the name "Homeowners Association Management Company, 'HOAMCO,'" with the name "Community Asset Management, LLC, d/b/a Homeowners Association Management Company (HOAMCO)."

[9] Plaintiff's original federal complaint named five individuals designated as "Attorneys," but three of those defendants were omitted from the currently operative Amended Complaint.

to easily access and fully enjoy the community park. He also alleges that the HOA Defendants have failed to maintain the common area sidewalks in the community; that the HOA Defendants have harassed and retaliated against him after he complained and filed the state court lawsuit;[10] and that the Law Firm Defendants committed fraud and other improprieties while serving as defense counsel in the state court proceedings. *See supra*, note 5. He alleges that, by these actions and inactions, Defendants have violated his rights under various state and federal laws, including the Fair Housing Act, 42 U.S.C. § 3601 *et seq*., and the Americans with Disability Act (ADA), 42 U.S.C. § 12111 *et seq*. Among other things, Plaintiff seeks injunctive relief requiring the HOA Defendants (i) to "make[ ] the community park [h]andicap accessible … by extending the [a]sphalt pathway from the park to Slumber Ct." (the street on which Plaintiff resides) and by "add[ing] a ramp for accessibility"; (ii) to fix or replace cracked or lifted sidewalks and streets; and (iii) to stop retaliating against Plaintiff for advocating for his rights under the Fair Housing Act.

### C. Pre-Service Review Of The Complaint

The pretrial judge originally assigned to the case reviewed Plaintiff's initial complaint prior to service,[11] and issued an Order To Show Cause ("OTSC") questioning whether there was federal jurisdiction in light of the parallel state court proceedings, which were referenced extensively in the complaint. *See* (Doc. 8). The OTSC cited the *Younger*[12] and *Rooker-Feldman*[13] doctrines, and

[10] The alleged retaliation consists of restricting Plaintiff's access to community resources; making Plaintiff's living environment hostile; invading Plaintiff's privacy; issuing baseless violations and fines against Plaintiff; coercing, intimidating, interfering with, and threatening Plaintiff; refusing to release a lien on Plaintiff's property; and denying Plaintiff services of common areas. (Doc. 14, ¶ 78).

[11] *See Lowrey v. Sandoval Cnty. Children Youth and Families Dep't,* No. 23-2035, 2023WL4560223, at *2 (10th Cir. July 17, 2023) ("Given a referral for non-dispositive pretrial matters, a magistrate judge may point out deficiencies in the complaint [and] order a litigant to show cause").

[12] *See Younger v. Harris*, 401 U.S. 37 (1971).

[13] *See Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

directed Plaintiff to "file an amended complaint showing that this case is not barred by" those doctrines. The OTSC also directed Plaintiff to submit with the amended complaint "a copy of the operative complaint and any orders ruling on Plaintiff's claims in the state court proceeding," and to "indicate whether the state court proceeding is ongoing, has been dismissed and whether Plaintiff has appealed any final judgment in the state court proceeding." (*Id.* at 3). Finally, the OTSC stated that the "amended complaint must, for each Defendant, 'provide fair notice of what the . . . claim is and the grounds upon which it rests.'" (*Id.*).

Plaintiff filed the Amended Complaint (Doc. 14) on August 20, 2025, and, on August 22, 2025, the then-presiding pretrial judge entered an order quashing the OTSC. The quashing order did not expressly discuss *Younger* or *Rooker-Feldman*, but clearly was referencing those doctrines when it stated that, although the case could proceed, Defendants were "not preclude[d] from raising the issues contained in the [OTSC], if appropriate." (Doc. 15 at 1 n.1). The quashing order also notified Plaintiff of his obligation to serve Defendants "within the time allowed by Rule 4(m)." (*Id.* at 2 (citing FED. R. CIV. P. 4(c)(1)). Thereafter, Plaintiff filed various returns of service (Docs. 17-29, 35, 38), and, on September 15, 2025, the Law Firm Defendants filed their Motion to Dismiss (Doc. 39). Shortly thereafter, on September 19, 2025, the HOA Defendants filed their Motion to Dismiss for Insufficiency of Service of Process (Doc. 44), as well as a "Motion To Join [the Law Firm] Defendants' Motion to Dismiss" (Doc. 46).

## III. Notice To Pro Se Litigant

Before proceeding to the Court's proposed findings and recommended disposition on the pending motions, the Court calls Plaintiff's attention to some case management issues arising from his pro se filings. As the Law Firm Defendants have pointed out (Doc. 84 at 1), the docket in this matter has become unnecessarily convoluted and lengthy due to some of Plaintiff's filings and his violations of the Court's procedural rules. For example, although the OTSC directed Plaintiff to

include with his amended complaint "a copy of the operative complaint and any orders ruling on Plaintiff's claims in the state court proceeding," Plaintiff has gone well beyond that directive by attaching over 400 pages of exhibits, most of which violate the rule in this District that "[e]xhibits are not attached to a pleading unless the documents attached form the basis for the action or defense." D.N.M. LR-CIV. 10.4. In addition, the exhibits collectively far exceed the 50-page limit permitted without consent or a court order. *See* D.N.M. LR-CIV. 10.5. Another procedural mistake Plaintiff keeps making, which has especially clogged up the docket, is filing the same exhibit to multiple documents in violation of the rule that "[a]n exhibit should be submitted only once and may later be referred to by document title and filing date." D.N.M. LR-CIV. 10.7. Plaintiff also has misnamed some of his filings,[14] in violation of rule that "[t]he title of a document must clearly identify its substance and any filed document to which it responds or is connected." D.N.M. LR-CIV. 10.2. And he has filed additional briefs that do not fit into any of the categories permitted by the Local Rules,[15] without seeking Court permission for a supplemental filing. Beyond these procedural violations, Plaintiff has (i) filed a surreply without waiting for the Court to grant his simultaneously filed motion seeking leave to file a surreply;[16] (ii) sought leave to file a surreply in circumstances that clearly do not warrant the filing of one;[17] and (iii) filed "Notices" or similar

[14] *See, e.g.,* (Doc. 65 (titled "Supplemental Brief In Support of Plaintiff's Reply To Defendants['] Motion To Dismiss," which is actually a supplemental brief in support of Plaintiff's motion for an in-person hearing)).

[15] Permitted filings include the motion, a brief in support of the motion (which may be submitted separately from the motion so long as it is filed contemporaneously therewith), a response brief, and a reply brief. *See* D.N.M. LR-CIV. 7.1, 7.3(a), 7.4(a).

[16] Until leave of court is granted, *see* D.N.M. LR-CIV. 7.4(b), a party may only file a *proposed* surreply, which should be submitted as an exhibit attached to the motion seeking leave to file.

[17] Courts "generally disfavor sur-replies and, consequently, permit them only in exceptional circumstances—e.g., when a reply brief raises new legal issues or relies on new facts." *Well Master Corp. v. Flowco Prod. Sols., LLC,* No. 21-CV-02145-CMA-KAS, 2023 WL 6808140, at *1 (D. Colo. Oct. 16, 2023) (citing *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000)).

documents (e.g., "Declaration") with the stated purpose of "calling the Court's attention to" some matter, *see* (Docs. 77, 79), when the proper procedure for adding new factual allegations or making additional or new legal arguments is to seek leave of Court to amend the pleadings or to file a supplemental brief. *See, e.g., Morales v. Supreme Maint. Inc.*, No. 1:21-cv-1044-KWR-JHR, 2023 WL 2043351, at *1 (D.N.M. Feb. 16, 2023) (a notice that "does not request the Court to take a particular action," but instead "only provides new allegations against" a party, is "improper").[18]

Viewed in isolation, Plaintiff's rule violations may not appear to be all that concerning, but collectively, Plaintiff's unauthorized exhibits and filings have imposed a heavy burden on this Court. *See In re McDonald*, 489 U.S. 180, 184 (1989) ("Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources."). Although pro se litigants are given considerable latitude, they generally are required to follow the same rules of procedure that govern other litigants. *Jaramillo v. Frewing*, 347 F. Supp. 3d 827, 839 (D.N.M. 2018). This means that Plaintiff has a responsibility to familiarize himself and comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Mexico. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("Pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *see* GUIDE FOR PRO SE LITIGANTS at 4, United States District Court, District of New Mexico (October 2022). The Court directs Plaintiff's attention to the Court's website, *http://www.nmd.uscourts.gov*, where he can find the Local Rules, the GUIDE FOR PRO SE LITIGANTS, and a link to the Federal Rules of Civil Procedure.

[18] Not all of Plaintiff's "notices" are inappropriate. For instance, it was proper for Plaintiff to file notices that do not include additional factual allegations or legal arguments, but only inform the Court about developments in the related state court proceedings that could be relevant to these proceedings. *See* (Docs. 71, 87, 88).

In familiarizing himself with the rules of procedure, Plaintiff should pay particular attention to Rule 11 of the Federal Rules of Civil Procedure, which provides among other things:

> **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney *or unrepresented party* certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b) (emphasis added). Failure to comply with the requirements of Rule 11 may subject Plaintiff to sanctions, including monetary penalties and nonmonetary directives. *See* FED. R. CIV. P. 11(c).

The Court also notes that Plaintiff has filed repeated motions seeking the same relief previously denied by the Court—specifically, Plaintiff has repeatedly sought an order permitting discovery or setting a scheduling conference so that discovery could begin. "The continual processing of" Plaintiffs' repetitive motions makes it difficult for the Court to fulfill its responsibility to see "that [its] resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. at 184. Plaintiff is on notice that the Court is "not required to expend judicial resources endlessly entertaining repetitive arguments." *Gardner v. U.S. Gov't*, No.

CIV. 08-0589 MV/LAM, 2010 WL 966419, at *1 (D.N.M. Feb. 18, 2010). At a certain point, repetitive arguments may rise to a level of "flagrant abuse of the judicial process," and such abuse "cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990).

Although the Court has overlooked Plaintiff's rule violations in making its recommendations on the motions presently under review, Plaintiff should not count on the Court doing so indefinitely. He is forewarned that if any of his claims survive the pending motions to dismiss, and he continues to not comply with either Court orders or the Federal and Local Rules of Civil Procedure having now been notified of his obligation to comply, then such failure to comply will indicate Plaintiff is either unwilling or unable to do so. If Plaintiff is unwilling or unable to comply with Court orders and/or the Federal and Local Rules of Civil Procedure, the Court must issue such orders as are necessary to ensure "the just, speedy, and inexpensive determination of [this] action," FED. R. CIV. P. 1, which may include monetary or non-monetary sanctions, filing restrictions, and even, if warranted, dismissal of Plaintiff's claims.

## IV. Discussion

### THE HOA DEFENDANTS' MOTION FOR JOINDER

The HOA Defendants' Motion For Joinder asks for leave to "join and adopt by reference where applicable the Motion to Dismiss filed by [the Law Firm Defendants]." (Doc. 46). Plaintiff objects, asserting he is prejudiced by the Motion to Join. (Doc. 74).

It is not improper for a party to seek to join in a motion filed by another party. *See* D.N.M. LR-CIV. 7.1(a) ("…. A party may adopt by reference another party's motion or other paper by making specific reference to the filing date and docket number of such motion or other paper."). But here, the HOA Defendants assert that they "join and adopt" the Law Firm Defendants'

arguments for dismissal "*where applicable*," without specifying which arguments, in their view, are "applicable." This omission raises the concerns over whether the HOA Defendants made a "reasonable inquiry" into whether the "claims, defenses, and other legal contentions" in the Law Firm Defendants' motion to dismiss, *if applied to the HOA Defendants*, "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b). Beyond that concern, "it is not this [C]ourt's duty … to make arguments for a litigant that he has not made for himself." *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015). Merely stating that they are joining the Law Firm Defendants' arguments "where applicable" does not give the Court enough information to rule on the issues raised in the Law Firm Defendants' motion as they may apply to the HOA Defendants without constructing legal arguments for the HOA Defendants, which is not the Court's role.

This is more than a technical defect in the Motion to Join. A great deal of the Law Firm Defendants' motion to dismiss addresses claims that are alleged solely against the Law Firm Defendants. *See* (Doc. 39 at 4 ("This Motion is focused on the claims against the Resnick Defendants and will not, therefore, address the full gambit of claims now raised by Plaintiff.")). And while the Law Firm Defendants' arguments based on *Younger* abstention and the *Rooker-Feldman* doctrine are not directed to any specific Counts in the Amended Complaint, the arguments raised by the Law Firm Defendants concerning those doctrines are at least partially tied to the specific claims and facts alleged against the Law Firm Defendants. A perfunctory adoption by reference under these circumstances results in a waiver of the legal arguments the HOA Defendants were hoping to join. *See Seifert v. Unified Gov't of Wyandotte Cty./Kan. City*, 779 F.3d 1141, 1156 (10th Cir. 2015) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by

some effort at developed argumentation, are deemed waived." (alteration in original) (citation omitted)).

For these reasons, the Court agrees with Plaintiff that the Motion for Joinder is improper, and/or that requiring Plaintiff and this Court to guess as what the HOA Defendants' arguments are in connection with the Law Firm Defendants' motion to dismiss, is prejudicial to both Plaintiff and the efficient administration of justice. Therefore, the Court recommends that the HOA Defendants' Motion For Joinder be denied.[19]

**THE LAW FIRM DEFENDANTS' MOTION TO DISMISS[20]**

The Amended Complaint alleges four claims against the Law Firm Defendants: conspiracy to interfere with a disabled persons civil rights under the Fair Housing Act and 42 U.S.C. ¶ 1985

[19] A denial of the joinder motion makes sense in light of the HOA Defendants' stated intention in their Rule 12(b)(5) motion to dismiss that they "have lodged a motion to join" the Law Firm Defendants' motion to dismiss "*[i]n the event* the Court deems service proper on any of the Defendants." (Doc. 44 at 2 n.1 (emphasis added)). As will be discussed, the Court does not find service on the HOA Defendants was proper, so ultimately there was no need for the HOA Defendants to join the Law Firm Defendants' motion. The joinder motion could be construed as seeking substantive relief from the Court, however. And if the Court granted the motion to join, it could be argued the HOA Defendants voluntarily submitted to the Court's jurisdiction, thereby waiving any defects in the service of process as argued in their separate motion to dismiss for insufficiency of service.

[20] In connection with the Law Firm Defendants' Motion to Dismiss, Plaintiff has filed a "Motion For An Oral Argument In Person Hearing" (Doc. 51), and the HOA Defendants filed a "Motion To Appear Telephonically Or Virtually For An Oral Argument Hearing" (Doc. 61). Plaintiff's motion argues that an in-person hearing is needed "for transparency, clarity, and an opportunity to fully present the complex factual and [l]egal issues at stake in these matters." (Doc. 64 at 2). The Law Firm Defendants and the HOA Defendants defer to the Court on the issue of whether a hearing is necessary. *See* (Doc. 57; Doc. 60 at 2; Doc. 84 at 2). Beyond that, the Law Firm Defendants "have no objection to the hearing being held in person, given Plaintiff's assertion he lacks the necessary technology to meaningfully participate remotely" (Doc. 57 at 1), while the HOA Defendants, by their separate motion, seek permission to appear remotely or telephonically at any hearing the Court were to schedule. Plaintiff did not file a response to the HOA Defendant's motion, but argues in an unrelated filing (Doc. 64) that the HOA Defendants' request to appear remotely or telephonically is prejudicial to him. The Court rejects that argument because the HOA Defendants merely seek permission *for them* to appear for a hearing remotely or telephonically. Granting that request would not preclude the Court from otherwise conducting the hearing in person insofar as Plaintiff and the other defendants are concerned. In any event, the Court finds that a hearing of any kind—whether in-person, remote, telephonic, or some combination of any of those—is unnecessary. The Law Firm Defendants' Motion to Dismiss is based on the written pleadings, so there is no need for an evidentiary hearing. In addition, Plaintiff has submitted a plethora of exhibits with his Amended Complaint, which the Court can consider without a hearing. The only purpose that a hearing would serve would be for the parties to repeat the legal arguments they have already made in the papers. Accordingly, Plaintiff's Motion For An Oral Argument In Person Hearing (Doc. 51) is denied, which renders the HOA Defendants' Motion To Appear Telephonically Or Virtually For An Oral Argument Hearing (Doc. 61) moot.

(Count VI); negligence (Count VII); "direct liability" for the Law Firm Defendants under 24 C.F.R. § 100.7(a)(2) (Count VIII); and vicarious liability for the Resnick Law Firm under 24 C.F.R. § 100.7(b).

The factual allegations underlying these claims stem from Plaintiff's allegations of perjury against Defendants Clark and Garcia.[21] The perjury purportedly occurred when those Defendants signed verifications of discovery responses in the state court proceedings, which responses purportedly denied Clark was involved with the HOA as an Officer or Director. *See* (Doc. 14 ¶ 97).[22] Exhibits attached to the Amended Complaint include numerous filings, reports, and other documents in which Plaintiff asserted that Clark "denie[d] that he was [e]ver a Director of Los Suenos De Albuquerque, HOA" (*id.* at 352), including a motion filed by Plaintiff "to address perjury by Defendant [Clark]" (*id.* at 327-28); a written letter from Plaintiff to the Albuquerque Police Department reporting the "perjury" (*id.* at 350-51); a written statement given by Plaintiff to the state district attorney's office alerting the office about the "perjury" (*id.* at 352); and a letter from Plaintiff to the state court trial judge about the alleged perjury (*id.* at 354-55).[23] The Law Firm Defendants, as counsel for the HOA and Clark in the state proceedings, signed the discovery

---

[21] The Amended Complaint also includes allegations regarding statements that the attorney defendants purportedly made to Plaintiff in the course of their representation of the HOA and Clark in the state court proceeding that appear to be outside the "perjury" allegations. For instance, Plaintiff alleges that, after receiving a letter from HOAMCO Compliance Officer Rodriquez, he told Attorney Rumac to tell the HOA to "stop harassing him" and that he "just want[ed] to be left alone," but that Attorney Rumac responded that the HOA "could not honor [Plaintiff's] request to be left alone." (Doc. 14 ¶ 24). Plaintiff also alleges that Attorney Goodman "threaten[ed] [s]anctions" against Plaintiff if he pursued specific motions, and told Plaintiff that he was "being watched on video and pictures for walking [his] Dog." (*Id.* ¶¶ 35, 38). The Court's discussion of the Law Firm Defendant's motion to dismiss will focus on the "perjury" and "fraud" allegations, without further mention of these additional factual allegations. The Court has considered these additional factual allegations, however, and concludes that they fail to give rise to a plausible claim for relief against the Law Firm Defendants for essentially the same reasons that will be discussed regarding Plaintiff's allegations concerning "perjury" and "fraud."

[22] Clark signed a verification of his own responses to Plaintiff's interrogatories, while Garcia signed a verification for responses to interrogatories directed to the HOA. *See* (Doc. 14 at 319, 323).

[23] *See also* note 7, *supra* (citing motions filed by Plaintiff in the state court proceeding raising the perjury and fraud issues).

responses in question. *See* (*id.* at 318, 322). In addition, Plaintiff contends that Attorney Rumac knew there was perjury and did nothing to correct it, and that Attorney Goodman repeated the perjurious statements during at least two state court hearings at which Goodman "den[ied] that Clark was ever a director for the HOA."[24] Plaintiff informed the state trial judge about Goodman's purportedly false statements to the court, and made a formal complaint against Goodman with the state attorney disciplinary board. (*Id.* at 354).

### A. *Younger* Abstention and the *Rooker-Feldman* Doctrine

The Law Firm Defendants ask the Court to dismiss Plaintiff's claims against them without prejudice pursuant to *Younger* abstention or *Rooker-Feldman* as an "alternative" to dismissal with prejudice pursuant to Rule 12(b)(6). *See* (Doc. 39 at 1-2). But they fail to develop a legal argument for dismissal on the basis of either doctrine. In fact, from their brief exposition of the *Rooker-Feldman* doctrine, the Law Firm Defendants appear to concede that *Rooker-Feldman* does *not* apply here (although they never expressly acknowledge that conclusion as part of their discussion), while the most forceful argument they can muster regarding *Younger* abstention is that its application to this case "remains unclear." (Doc. 39 at 7). Given the Law Firm Defendants' brief discussion of *Younger* and *Rooker-Feldman* and their stated uncertainty as to the applicability of either doctrine, it is unclear to the Court why they even raised the issues in their motion. The previous quashing order stated only that the federal defendants were "*not preclude[d]*" from raising *Younger* or *Rooker-Feldman* "*if appropriate*." (Doc. 15 at 1 n.1 (emphasis added)). If the Law Firm Defendants nonetheless felt compelled to raise those issues because of that quashing

---

[24] *See* (Doc. 14 at 358 (hearing transcript notes indicating Goodman might have said that Clark "has never been the director of" the HOA, and that he "is actually the Plaintiff's next door neighbor"); *see also* (*id.* at 360 (same, with hearing transcript notes indicating Goodman might have said instead that Clark was "not a *board member* of [the] HOA" (emphasis added))).

order, then they had a duty to either present a good faith argument for application of either doctrine, or, if they were unable to do so, then candidly admit as much. Instead, they casually assert that the Court *could* apply either doctrine as an "alternative" to Rule 12(b)(6) dismissal if the Court is not *"inclined*" to exercise jurisdiction over Plaintiff's claims. (Doc. 39 at 1-2; Doc. 55 at 2).

The Court is "dismayed" by these arguments. *N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv*., 645 F. App'x 795, 803–04 (10th Cir. 2016). They appear to be an attempt by the Law Firm Defendants to preserve *Younger* and *Rooker-Feldman* as a basis for dismissal but transfer the burden of constructing an argument for applying either doctrine to the Court. As the Tenth Circuit has said, "under our adversarial system of justice, we rely on lawyers to identify the pertinent facts and law." *Id.* (internal quotation marks and citation omitted). The Court does "not act as advocates for parties, and … will not typically search out the facts necessary to support a litigant's position." *Id.* (citing *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) ("[W]e are wary of becoming advocates who comb the record ... and make a party's case for it." (internal quotation marks and citation omitted)). The Court has "limited resources, and can ill afford to go on a treasure hunt in the record without doing a disservice to other litigants." *Id.* (citing *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000) (admonishing counsel for "wasting th[e] Court's limited resources" by submitting briefs without "even rudimentary citations to the record")).

Ordinarily, "perfunctory and fleeting invocation of" a legal argument waives the argument. *Hays Med. Ctr. v. Azar*, 956 F.3d 1247, 1264 n. 18 (10th Cir. 2020). But *Rooker-Feldman* is jurisdictional,[25] and *Younger* abstention, although technically nonjurisdictional,[26] is "a prudential

---

[25] *See Jester v. Wells Fargo Bank N.A.*, 297 F. Supp. 3d 1233, 1241 (E.D. Okla. 2018) (stating that the *Rooker-Feldman* "doctrine is a jurisdictional prohibition, based on 28 U.S.C. § 1257, which holds that federal review of state court judgments may be obtained only in the United States Supreme Court, not by collateral litigation in federal district court").

[26] The Tenth Circuit has clarified that, while some of its previous decisions "characterized *Younger* as jurisdictional," *Hunter v. Hirsig*, 660 F. App'x 711, 716 n.5 (10th Cir. 2016) (citing *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223,

limitation on the court's exercise of jurisdiction," *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003), which "determine[s] when the federal courts *must refrain* from exercising jurisdiction," *Hunter*, 660 F. App'x at 716 n.5 (emphasis added) (internal quotation marks and citation omitted). Courts have a "duty to consider unargued obstacles to subject matter jurisdiction." *United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1518 n.2 (10th Cir. 1996); *see also Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996) ("When confronted with circumstances that clearly implicate *Younger* concerns, a federal court must abstain," and is "obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction" (internal quotation marks and citations omitted)).[27] Therefore, despite the Court having already considered the applicability of *Younger* and *Rooker-Feldman* once when it quashed the OTSC, by citing those doctrines as part of an undeveloped argument for "alternative" relief, the Law Firm Defendants have forced the Court to conduct a second review of whether those doctrines apply and to do so once again without the benefit of an interested party having provided substantive briefing on the issues.[28]

---

1227–28 (10th Cir. 2004)), "*Younger* neither provides a basis for nor destroys federal jurisdiction," *id.* (internal quotation marks and citation omitted).

[27] *But see Universal Amusement Co. v. Vance*, 587 F.2d 159, 164 n.6 (5th Cir. 1978) ("Appellant did not raise the question of *Younger* abstention, and that issue, being nonjurisdictional, is thus not before this court."), *aff'd*, 445 U.S. 308 (1980).

[28] Arguably, the Court need not address *Younger* abstention because the Law Firm Defendants might have waived dismissal on that basis by affirmatively asking the Court to order a dismissal with prejudice based on an examination of Plaintiff's claims on the merits. *See* (Doc. 39 at 8); *see, e.g.*. *Barichello*, 98 F.3d at 955 (holding that the "state has waived abstention arguments by expressly urging the federal court to address the merits"); *Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (court need not abstain where state "expressly urge[s] the court to adjudicate" the claims against it "on the merits"); *see also* 17B FED. PRAC. & PROC. JURIS., § 4252 (3d ed.) (citing case law for the proposition that the state may "voluntarily choose[ ] to submit to a federal forum").

### 1. *Rooker-Feldman*

The *Rooker-Feldman* doctrine precludes a district court from reviewing the judgments of state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005); *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012) ("In other words, an element of the claim must be that the state court wrongfully entered its judgment."). The Law Firm Defendants state that "[t]here was no final judgment entered as the state court matter is still proceeding." (Doc. 39 at 7). That statement, however, was made close to a year ago. And because the Law Firm Defendants never definitively state that *Rooker-Feldman* does not apply here, the Court must clarify that, even if the state proceedings, which were "on-going" when the Law Firm Defendants filed their motion, have since been terminated, *Rooker-Feldman* does not preclude subject matter jurisdiction in this case. "The *Rooker-Feldman* doctrine … is confined to cases … brought by state-court losers complaining of injuries caused by state-court judgments rendered *before the district court proceedings commenced* and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.,* 544 U.S. at 284 (emphasis added)); *see Velasquez v. Utah*, 775 F. App'x 420, 422 (10th Cir. 2019) (there must be a final state court judgment which the relief sought by the plaintiff in the federal lawsuit would "undo"). As it turns out, the state court proceedings remain pending even now.[29] But even if the facts were otherwise, there was no state court judgment when Plaintiff filed this case, which means there is not and never has been a good faith argument for alternative dismissal of Plaintiff's claims based on *Rooker-Feldman. See Exxon Mobil Corp.,* 544 U.S. at 292 ("neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court").

---

[29] *See* note 30, *infra*.

### 2. *Younger* Abstention

The question of whether *Younger* abstention might apply here appears—at least at first glance—to require a more in-depth analysis. The Law Firm Defendants discuss a three-part test by which *Younger* applies if "(1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges." (Doc. 39 at 6 (quoting *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997)). The Law Firm Defendants note that the state proceedings are on-going,[30] and then present a convoluted argument about whether there is an adequate opportunity for Plaintiff to raise his claims against them in the state proceedings.[31] They fail to discuss, however, the requirement of an important state interest, the absence of which seems likely given the nature of Plaintiff's claims, and would preclude application of *Younger* abstention regardless of the other two circumstances being present. But more important than that omission, the three circumstances for applying *Younger* identified in the Law Firm Defendants' motion—referred to in the case law as the *Middlesex* conditions—are "*additional* factors appropriately considered by

[30] This statement was made in the motion, filed in September 2025. The Law Firm Defendants have never updated the Court with later developments in the state court proceedings, despite those proceedings being relevant to their arguments on *Younger* abstention. Fortunately Plaintiff has done so, informing the Court on November 20, 2025 that the Court of Appeals of New Mexico dismissed his appeal on November 15, 2025, and remanded for further proceedings in the trial court (Doc. 71); then notifying the Court on March 27, 2026 that the state trial court had entered an order on March 4, 2026 staying the proceedings pending the outcome of the motions to dismiss in the present matter (Doc. 87 at 2); and finally notifying the Court on May 18, 2026, that, on May 5, 2026, the New Mexico Supreme Court denied Plaintiff's petition for writ of mandamus requiring the trial court to lift the stay (Doc. 88 at 3). Although Plaintiff indicates that he has not given up his efforts to obtain an order lifting the stay of the state court proceedings (*id*. at 3-8), there has been no update indicating any of those continuing efforts have been successful.

[31] The argument has to do with whether Plaintiff has an adequate remedy in the state court proceeding for his claims against the Law Firm Defendants when the Law Firm Defendants are not parties in that proceeding. The Law Firm Defendants appear to conclude from their discussion of this issue that Plaintiff does *not* have an adequate remedy against them in state court because they were "incapable of being joined as parties in the underlying matter." (Doc. 39 at 7). The statutory citation they provide in support of that assertion, however, does not state an absolute rule prohibiting claims against attorneys in all circumstances. Furthermore, it is unclear to the Court in any event why the Law Firm Defendants would be arguing that "Plaintiff could not have asserted a cause of action against [them]" in the state court proceeding (*id.*) as part of their discussion of an issue intended to support their request that the Court dismiss Plaintiff's claims pursuant to *Younger* abstention as an alternative to dismissal under Rule 12(b)(6).

the federal court" only *after* the court finds that the case "falls within one of the enumerated 'exceptional' types of cases" to which *Younger* might apply. *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (internal quotation marks omitted) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73, 78 (2013) (emphasis in original)). In short, "the *sine qua non* of *Younger* abstention is the presence of an 'exceptional' state court proceeding, and *Younger* extends no further." *Id.* (internal quotation marks and citation omitted); *see, e.g., Cherokee Nation v. Free*, No. 25-cv-0630-CVE-JFJ, 2026 WL 1693000, at *7–8 (N.D. Okla. June 11, 2026).

There are only three types of cases deemed "exceptional" for which "the possibly of *Younger* abstention is triggered." *Travelers Cas. Ins. Co. of Am.*, 98 F.4th 1307, 1317. The categories are: "(1) state criminal prosecutions, (2) civil enforcement proceedings [that take on a quasi-criminal shape], and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function." *Id.* (quoting *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023)). This case does not fall within one of these categories. The state proceedings are not criminal; they are not quasi-criminal; and they do not involve any orders that are uniquely in furtherance of the state court's ability to perform its judicial function. The Law Firm Defendants do not argue otherwise. The Supreme Court "has not applied *Younger* outside these three exceptional categories, which define *Younger's* scope." *Id.* (internal quotation marks and citation omitted).

In sum, the Law Firm Defendants affirmatively urge the Court to apply *Rooker-Feldman* and/or *Younger* abstention as "alternative" relief, despite the absence of any good faith argument based in law and fact that such dismissal would be appropriate and when their truncated discussion of those doctrines in fact suggests that neither one applies. For the reasons discussed above, the

Court recommends that the Law Firm Defendants' alternative arguments for dismissal under either *Younger* abstention or *Rooker-Feldman* be rejected.

. **B. Dismissal Pursuant To FED. R. CIV. P. 12(b)(6)**

To survive a motion to dismiss brought pursuant to FED. R. CIV. P.12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**1. Section 1985 Conspiracy Claim**

Plaintiff's conspiracy claim against the Law Firm Defendants in Count VI of the Amended Complaint is brought pursuant to 42 U.S.C. § 1985 and the Fair Housing Act. According to Plaintiff, Attorneys Rumac and Goodman participated in a conspiracy to obstruct justice, to intimidate him, and to deprive him as a disabled person of his civil rights. Their participation consisted of "conspir[ing] to conceal former HOA director/Vice president Mr. James Clark's role with the HOA by denying any involvement with the HOA as an Officer or Director," and by aiding and abetting the perjury committed by the HOA and Clark. (Doc. 14 ¶¶ 97, 100).

The Law Firm Defendants discuss multiple subsections of §1985 in their motion, but Plaintiff clarifies in his response brief that his conspiracy claim is based on subsection (3). That provision "reaches private conspiracies to deprive others of legal rights." *Griffin v. Breckenridge*, 403 U.S. 88.[32] "While the Rule 12(b)(6) standard does not require that Plaintiff establish a prima

[32] Titled "Depriving persons of rights or privileges," the statute states in relevant part as follows:

> If two or more persons in any State or Territory conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012). The elements of a successful claim under § 1985(3) are: "(1) a conspiracy; (2) to interfere with [the plaintiff's] rights; (3) because of racial or class-based animus; (4) an act in furtherance of the conspiracy; and (5) a resulting injury or deprivation." *Lesley v. Bennett*, 778 F. Supp. 3d 1201, 1211 (D. Wyo. 2025) (citing *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)).

***(a) the intent element of the class-based discriminatory animus requirement***

The Law Firm Defendants focus their arguments on the third element of a § 1985(3) claim requiring a racial or class-based animus. That element arises out of the statutory language requiring an intent to deprive a person of equal protection, or equal privileges and immunities. The Supreme Court held in *Griffin* that this language means "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102. The requirement of a class-based animus "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271-72 (1993)

---

> protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; …. in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

(internal quotation marks and citations omitted). Accordingly, "it does not suffice for application of § 1985(3) that a protected right be incidentally affected. A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right." *Id.* at 275. Rather, the impairment of the right "must be a conscious objective of the enterprise." *Id.*

The Court agrees with the Law Firm Defendants that the Amended Complaint does not contain factual allegations from which it could plausibly be inferred that the alleged conspiracy between the Law Firm Defendants and the HOA Defendants was aimed at Plaintiff *because of* his disability status. Even if the HOA Defendants lied about Clark's position within the HOA and the Law Firm Defendants participated in that lie, those alleged facts do not plausibly show that the parties in question engaged in that conduct because of Plaintiff's disability status. The alleged conduct may have affected Plaintiff's ability to exercise of his rights under the Fair Housing Act and/or ADA, but affecting the rights of a protected class does not alone satisfy the requirements of the statute. "[T]he conspiracy must itself be for the purpose of denying equal protection; the deprivation must be the goal of the conspiracy. … Plaintiff must do more than allege that two or more people conspired to act against him and that these actions deprived him of the equal protection of the laws." *Escalante v. Gardner Police Dep't,* No. 23-CV-2529-JWB-TJJ, 2024 WL 1116071, at *3 (D. Kan. Mar. 14, 2024), r*eport and recommendation adopted sub nom. Escalante v. City of Gardner*, No. 23-2529-JWB, 2024 WL 1655141 (D. Kan. Apr. 17, 2024), *aff'd*, No. 24-3058, 2024 WL 3963728 (10th Cir. Aug. 28, 2024). Because Plaintiff does not allege any facts that plausibly suggest the complained-of actions were taken "for the purpose of" denying Plaintiff's federal rights as a disabled person, he has failed to state an adequate claim for relief under § 1985(3).[33]

[33] *See, e.g., Stand With US Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 26 (1st Cir. 2025) (affirming dismissal of § 1985(3) conspiracy claim because the allegation that "impairing the rights of Jewish students was among

***(b) scope of the class-based discrimination requirement***

The Court also finds merit in the Law Firm Defendants' second argument, which is that the scope of § 1985(3) does not extend to discriminatory animus towards disabled people. The Supreme Court has said that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." *United Brotherhood of Carpenters and Joiners of America Local 610 v. Scott*, 463 U.S. 825, 836 (1983). The question is whether, since *United Botherhood of Carpenters*, § 1985(3) has been interpreted to extend to class animus based disability status.

The only case cited by the Law Firm Defendants in support of their argument that § 1985(3) does not extend to disabled persons as a class is *Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006), which is not a § 1985(3) case but instead holds that the "disabled are not a suspect class for equal protection purposes." *Id*. at 33 (citing *City of Cleburne, Texas v. Cleburne Living Ctr*., 473 U.S. 432, 439, 448–50 (1985)).[34] Although the language of § 1985(3) references the concept of equal protection under the law, the Supreme Court has not "automatically incorporated" Equal Protection Clause jurisprudence into § 1985(3). *Bray*, 506 U.S. at 272 n.4. This is not to say that Equal Protection jurisprudence is totally irrelevant to the scope of § 1985(3).[35] But it is unnecessary to

---

the student protestors' 'conscious objective[s],' was merely conclusory (citing *Iqbal*, 556 U.S.at 681 (holding that, while the plaintiffs' allegations were "consistent with" a discriminatory purpose, they did not "plausibly establish this purpose" given "more likely explanations"))); *Snyder v. Talbot*, 836 F. Supp. 19, 25 n 9 (D. Me. 1993) ("The Complaint is filled with conclusory allegations that Defendant and other conspirators were motivated by animus directed against Plaintiff's gender and handicap but includes scant factual support for this claim.").

[34] A Tenth Circuit case for the same proposition as *Toledo*, which the Law Firm Defendants do not cite until their reply brief, is *Davoll v. Webb*, 194 F.3d 1116, 1145 (10th Cir. 1999) ("Although protected by statutory enactments such as the Americans with Disabilities Act, the disabled do not constitute a 'suspect class' for purpose of equal protection analysis." (internal quotation marks and citation omitted)).

[35] *See, e.g.. Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022) (holding that § 1985(3) "does not cover conspiracies grounded in 'disability," and relying in part on older circuit precedent which had concluded that

rely on the "suspect class" line of cases to determine the outcome here when there is controlling precedent in the Tenth Circuit decided directly under § 1985(3), which the Law Firm Defendants for some reason fail to cite. *See Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1177 (10th Cir. 1983) (holding that "a class of 'handicapped persons' was not in the contemplation of Congress in 1871, and was not included as a class in what is now § 1985(3)").

The Court acknowledges that *Wilhem* was decided in 1983 and that there is a circuit split on the issue of whether § 1985(3) reaches disability discrimination.[36] Furthermore, the Third Circuit, in concluding that "the mentally retarded, as a class," are protected by the statute, thought it "significant that the two appellate decisions construing section 1985(3) as too narrow to encompass the handicapped [referencing the Tenth Circuit's *Wilhelm* opinion and an opinion by the Seventh Circuit] pre-dated the enactment of Title II of the Americans with Disabilities Act," and "did not, therefore, consider the impact of Congress' specific findings with respect to the severity and ubiquity of discrimination against the handicapped." *Lake,* 112 F.3d at 686 & n.5, 687. A more recent opinion by the Sixth Circuit, however, arrived at the same conclusion as *Wilhelm.*[37] And beyond that, as noted by another district court in this circuit, "the Tenth Circuit has never revisited" *Wilhelm*, "and there is no intervening authority from the United States Supreme Court that casts any direct doubt on it. Accordingly, this Court is bound to follow it."

"§ 1985(3) reaches only conspiracies targeting a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework" (citation omitted)).

[36] *See Freyre v. Hillsborough Cnty. Sheriff's Off.*, No. 8:13-CV-02873-T-27, 2014 WL 6885913, at *13 (M.D. Fla. Dec. 5, 2014) (stating that the Tenth, Sixth, and Seventh Circuits have held that the disabled are not a protected class under § 1985(3), and that the Second, Third, and Eighth Circuits have held that they are); *see also Lake v. Arnold,* 112 F.3d 682, 686 (3d Cir. 1997) (stating that "[t]he lack of definitional standards applicable to the identification of classes protected by section 1985(3) has resulted in a split of authority" on the issue of that statute's applicability to disability-based animus").

[37] *See Post,* 44 F.4th at 580.

*Ramsey v. Sw. Corr. Med. Grp., Inc*., No. 18-CV-1845-WJM-KLM, 2019 WL 3252181, at *16 (D. Colo. July 19, 2019) (citing *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990) ("A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits."))). Accordingly, pursuant to *Wilhelm,* the Court concludes that Plaintiff's claim under § 1985(3) fails as a matter of law.[38]

***(c) existence of a conspiracy***

Lest Plaintiff object that the foregoing discussion recommends dismissal on the bases of what seem to be technical legal arguments, the Court feels compelled to address a third argument for dismissal, which the Law Firm Defendants only indirectly raise but which squarely addresses Plaintiff's factual allegations and whether an actual conspiracy can plausibly be inferred from those allegations. "A conspiracy requires the combination of two or more persons acting in concert" to achieve an unlawful purpose. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004). Although a "conspiracy may be inferred from conduct and need not be proven by evidence of an express agreement, … [a] mere allegation of conspiracy without factual specificity is insufficient." *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1069 (C.D. Cal. 2024) (internal

[38] Another more recent decision by a district court in this Circuit discusses the class-based animus requirement of § 1985(3) in some depth, and concludes that the Tenth Circuit would find that § 1985(3) does extend to sex-based discriminatory intent based on gender identity and sexual orientation. *See Lesley,* 778 F. Supp. 3d at 1212-1215. In the course of its analysis, the *Lesley* court stated that *Wilhelm* "does not reflect the [Tenth] Circuit's most recent position on" the scope of § `1985(3), and that, following the Supreme Court's decision in *Bray*, the Tenth Circuit "largely abandoned its historical analysis [in *Wilhelm*], and instead reverted to its earlier, pre-*Wilhelm* definition" that § 1985(3) claims "must be alleged based on 'statutorily protected class[es].'" *Id.* at 1214 (quoting *Yaklich v. Grand Cnty*., 278 F. App'x 797, 801 (10th Cir. 2008) (quoting *Silkwood v. Kerr–McGee Corp*., 637 F.2d 743, 746 (10th Cir. 1980))). *Lesley's* analysis of *Wilhelm*, though suggesting the decision is outdated, does not change the Court's analysis here. If the Tenth Circuit were to update its analysis of whether the disabled as a class fall within the discriminatory animus requirement of § 1985(3), it is unknown whether it would extend the requirement to all statutorily protected classes, in which case disability as a class would be included, or whether it instead would limit the extension to classes that have been designated as suspect or quasi-suspect and therefore requiring more exacting scrutiny under an Equal Protection Clause analysis, in which case disability would not be included. *See* note 35, *supra*. But the question is academic for present purposes as *Wilhelm* remains good law and, in contrast to the facts in *Lesley*, is directly on point to the facts of this case.

quotation marks and citations omitted); *see World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1141 (10th Cir. 2006) (factual allegations must include "circumstances from which it reasonably follows, or at least may be reasonably inferred, that the conspiracy existed").

Despite the length of the Amended Complaint, the Court can find no specific factual allegations from which it might reasonably be inferred that the Law Firm Defendants entered into an agreement or made a plan with the HOA Defendants to achieve an unlawful purpose. Rather, the alleged facts show only that the Law Firm Defendants represented the HOA Defendants in the state court proceedings, bringing motions and making arguments in furtherance of that representation. "[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co–conspirator." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Rather, to plausibly allege a conspiracy between the Law Firm Defendants and the HOA, Plaintiff must allege facts to suggest there was some type of "corruption" involved in the Law Firm Defendants' representation of the HOA and Clark in the state court proceedings. *Id.; see also Astarte, Inc. v. Pac. Indus. Sys., Inc.*, 865 F. Supp. 693, 708 (D. Colo. 1994) (stating that an "attorney, being an agent of his principal, cannot be held liable for conspiracy with his principal where the agent acts within the scope of his authority" unless his actions "rise to the level of active participation in a fraud"). The question, therefore, is whether Plaintiff has alleged facts plausibly showing the Law Firm Defendants' "corruption" or "participation in fraud" during the state court proceedings.

The Court first examines Plaintiff's allegations regarding the perjury claim. To plausibly allege conduct that amounts to perjury, the Amended Complaint must set forth facts showing that a statement was made in a court proceeding under oath; that the statement was false; that the speaker knew at the time that the statement was false; and that the statement was material to the court proceeding. *See United States v. Milliron*, 179 F.4th 790, 795 (10th Cir. 2026) (citing 18

U.S.C. § 1623(a)). The only possible factual bases in the Amended Complaint for Plaintiff's perjury accusations are the verifications of interrogatory responses in the state court proceedings by Clark and Garcia (the latter being on behalf of the HOA).[39] Plaintiff alleges that Clark and Garcia verified under oath that "Clark was never a director with" the HOA (Doc. 14 ¶ 20), which, according to Plaintiff, is false. *See* (*id.* ¶ 4 (alleging that Clark is a "former Vice President and Director" of the HOA)).

The Court accepts as true the allegation that the statement "Clark was never a director of the HOA" is false. That is still not enough, however, to plausibly give rise to a claim of perjury based on the verified interrogatory responses. This is because those responses do not in fact state that Clark was *never* a director with the HOA; rather the responses use the present tense to state only that Clark "is not" a Director or agent of the HOA in reference to his current status vis a vis his ability at that time to act on behalf of the HOA.[40] Plaintiff's allegation that the interrogatory responses verified by Clark and Garcia contained a broader factual statement, i.e., a statement that Clark was *never* a Director of the HOA, is "at variance with the express terms of" the interrogatory responses, which are attached to the complaint as an exhibit and made a part thereof." *Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972). "[I]n deciding a 12(b)(6) motion, the legal effect of the [attached documents] are determined by the [documents] themselves rather than by

---

[39] Plaintiff states in a "Motion to Address Perjury by Defendant" filed in the state court proceedings that, during a hearing on December 28, 2023, Attorney Goodman and Clark "gave testimony that Mr. Clark was never a HOA Director for Los Suenos De Albuquerque. 'Ever.'" (Doc. 14 at 327). The Court does not find that the wording in this motion plausibly suggests that either Goodman or Clark were testifying under oath when they allegedly made the statements in question. Thus, the Court addresses Plaintiff's allegations concerning this and similar statements that supposedly were made by the attorney defendants during hearings in the state court case as part of its discussion of Plaintiff's "fraud on the court" arguments, rather than his perjury arguments.

[40] *See* (Doc. 14 at 310 (Clark's verified interrogatory responses, stating in relevant part that "Clark *is* not an employee, agent, Director, or member of the Board of Directors of Los Suenos, and has not agreed to (and cannot agree to) accept service of Plaintiff's First Interrogatories on behalf of Los Suenos." (emphasis added))); (*id.* at 321 (Garcia's verified interrogatory responses, stating in relevant part that "Clark *is* not an agent for" the HOA, and that the HOA "has not been served with Plaintiff's First Interrogatories" (emphasis added))).

allegations in the complaint." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 942 (10th Cir. 2002) (citing *Droppleman v. Horsley*, 372 F.2d 249, 250 (10th Cir. 1967)). In other words, where, as here, there is a conflict between the allegations in the complaint and the content of the attached exhibits, the exhibits control. *Brokers' Choice of Am., Inc*., 861 F.3d at 1105.

Plaintiff also alleges that the conspiracy involves fraud on the court.[41] But that allegation too is not plausible. "Fraud on the court" is generally defined as "fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) (citation omitted).[42] In addition, "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court. Less egregious misconduct, *such as nondisclosure to the court of facts allegedly pertinent to the matter before it*, will not ordinarily rise to the level of fraud on the court." *Weese v. Schukman*, 98 F.3d 542, 552–53 (10th Cir. 1996) (quoting *Rozier v. Ford Motor Co*., 573 F.2d 1332, 1338 (5th Cir.1978)) (emphasis added by court).

Plaintiff's fraud on the court theory stems from his allegations that the attorney Law Firm Defendants made statements at hearings in the state court proceedings denying that Clark was ever a Director of the HOA. For present purposes, the Court accepts those allegations as true. At the

[41] The Law Firm Defendants treat Plaintiff's fraud on the court argument as if it were a new "cause of action, not contained in the Amended Complaint." (Doc. 55 at 5). But Plaintiff's arguments concerning fraud on the court have always been a part of his claims against the Law Firm Defendants, which the Court construes to be allegations in support of Plaintiff's § 1985(3) claim, not a separate cause of action. And, contrary to the Law Firm Defendants' suggestion (*id.* at 6), Plaintiff does not have to wait to raise those arguments as part of a motion seeking relief from a final judgment in the state court proceedings; he can also raise them as part of his claim in this lawsuit that the Law Firm Defendants participated in a conspiracy with the HOA Defendants in violation of § 1985(3).

[42] For this reason, the alleged facts related to Plaintiff's perjury claim do not support Plaintiff's fraud on the court theory. *See Buck*, 281 F.3d at 1342 ("It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court.").

same time, however, the Court takes judicial notice of the fact that Plaintiff argued in motions filed in the state court proceeding that the attorneys' statements during court hearings were false and amounted to fraud on the court (Doc. 14 at 333-37), but that the state court rejected those arguments. *See* (*id.* at 431-32 (Order Denying "Motions [To Address Perjury By Defendant and To Address Fraud Upon the Court] Filed Plaintiff")). The state court's rejection of Plaintiff's arguments might not be a complete bar to Plaintiff alleging as part of his § 1985(3) claims in these proceedings that the attorney Law Firm Defendants committed fraud on the state court. But it certainly impacts the Court's assessment of the plausibility of Plaintiff's claims in this case. Fraud on the court requires more than an untrue statement made during the state court proceedings; it also requires materiality, knowledge, and, importantly, an intent to deceive.[43] But the Amended Complaint does not allege any additional facts beyond the allegedly false statements themselves to show that the false statements were material and made with knowledge and the requisite state of mind. Thus, for the Court to find the Amended Complaint's fraud on the court allegations plausible, *not only* would it have to infer materiality, knowledge, and intent to deceive solely from the fact that the statements were made, but it would have to do so when the very judge who heard the statements clearly concluded that even if they were false they did not rise to the level of fraud. *See Myser v. Tangen,* No. C14-0608JLR, 2015 WL 502316, at *7 (W.D. Wash. Feb. 5, 2015) (fraud on court allegations held implausible where the plaintiff did not explain why opposing

---

[43] *See Buck,* 281 F.3d at 1342 (stating that "'fraud on the court,' whatever else it embodies, requires a showing that one has acted with an intent to deceive or defraud the court," and that "when there is no intent to deceive, the fact that misrepresentations were made to a court is not of itself a sufficient basis for [a court to find] … 'fraud on the court'" (quoting *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995))); *see also Rodriguez v. Honigman Miller Schwartz & Cohn LLP*, 465 F. App'x 504, 509 (6th Cir. 2012) (plaintiff failed to "adequately plead[ ] that (1) defendants engaged in conduct that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth and (2) that such conduct deceive[d] the court") (internal quotation marks and citation omitted)); *Conyers v. Virginia Hous. Dev. Auth.*, No. 3:16-CV-690-JAG, 2017 WL 4159533, at *3 (E.D. Va. Sept. 19, 2017) (plaintiff has not alleged a plausible claim of fraud on the court because she "has not shown that any alleged fraud affected her" claims in the proceedings in which the fraud allegedly occurred).

counsel's "mischaracterization was particularly harmful to the judicial process," and did not contend that "he lacked opportunities to point out opposing counsel's mischaracterizations" or that the trial judge was actually "misled"), *aff'd,* 671 F. App'x 1006 (9th Cir. 2016); *see generally SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible").

In sum, the Court can, and does, accept for present purposes that the Law Firm Defendants made the alleged statements about Clark's position in the HOA during the state court proceedings. Furthermore, although the matter appears to be hotly contested,[44] the Court accepts as true for

[44] Plaintiff's allegations in the state court proceedings concerning Clark's relationship to the HOA vary somewhat. *See* (Doc. 14 at 394 (alleging that in 2022 Clark was a HOA Director)); (*id.* at 418 (alleging that "at all material times hereto [Clark] "was a member of the Board of Directors")); (*id.* at 423 (alleging that, "[u]pon information and/or belief, [ ] Clark was the Executive Director or chief operating officer")). He alleges in the current Amended Complaint that Clark is a "former Vice President and director" (*id.* at 2, ¶ 4), which is ambiguous insofar as whether the word "former" is intended to modify only "Vice President" or both "Vice President" and "Director." It appears that in May 2024, Attorney Goodman stated in an email to Plaintiff's then-counsel (who later withdrew from representing Plaintiff (*id.* at 366, 435; Doc. 39-1 at 1 n.1)), that he had advised counsel that Clark has "never been an officer of the HOA," that "Plaintiff is aware of this," and that the "court was aware of this" as well, because "this has been before the Court on 3 separate hearings." (Doc. 14. at 378). In another email around the same time, Goodman told Plaintiff's then-counsel that the latter's allegation in a proposed amended complaint that Clark was an "Executive Director or chief operating officer" of the HOA was "false"; that Clark was a board member only of [the] HOA for 6 months in 2022; and that "as stated multiple times, he was never an officer, director, COO or anything like that." (*Id.* at 377). Plaintiff's then-attorney told Goodman that Plaintiff believed Clark was a director because he had performed a Google search and saw Clark's name listed as a director. (*Id.* at 375). Goodman asked to see the Google search, so he could present it to his client and ask about it. (*Id.* at 373). Plaintiff's then-attorney responded that he did not have the Google search, but that he has "witness testimony to the effect that Clark was running the HOA." (*Id.* at 372). Goodman responded that he was scheduled to talk with his client that day and would reach out afterwards with any additional information he learned on the matter. (*Id.* at 370). The factual trail in the record on this issue appears to end there, although Plaintiff has attached as an exhibit to the Amended Complaint several pages that could be the result of a Google search, which are mostly unreadable except for a small portion of one page that appears to list Clark as a Vice President of the HOA. (*Id.* at 324-26). The source of that information, however, could be suspect, as the pages do not appear to be from an official website of the HOA but from an entity named "opencorporates." It is frustrating that the state court record is so confusing on a factual question that Clark probably could have cleared up with a one or two sentence affidavit. Even if the facts are in Plaintiff's favor on the issue, the Court does not see how that could be more prejudicial to Clark than the on-going morass that is the current state of the parties' legal relations. The fact that, after what have been years of litigation between the parties, the record remains obscure on Clark's exact relationship to the HOA could be construed as weighing in favor of Plaintiff's factual allegations on that issue, although not enough to say that those allegations give rise to plausible legal claims for the reasons discussed in the text.

present purposes that the statements the Law Firm Defendants made about Clark's role in the HOA were untrue. But even if the Law Firm Defendants made one or more incorrect statements to the state court regarding Clark's role in the HOA, those incorrect statements would not plausibly suggest conduct sufficiently egregious to rise to the level of fraud on the court. The most that can be said from the Amended Complaint's allegations is that the Law Firm Defendants might have misled Plaintiff, and possibly even the state court, concerning Clark's exact relationship to the HOA at certain points in time (and even that is a generous reading of the allegations and documents attached to the Amended Complaint). But there are no allegations from which the Court could plausibly infer that false statements were made that were material to the proceedings, or that the false statements were made with knowledge of their falsity and also with an intent to deceive the court. Nor are there any plausible allegations that would suggest any misstatements were made as part of an agreement or plan between the Law Firm Defendants and the HOA Defendants. *See, e.g., Wade v. Robertson,* No. 18-CV-102-GKF-FHM, 2018 WL 1796295, at *3 (N.D. Okla. Apr. 16, 2018) (dismissing conspiracy claim against attorneys where the complaint included no factual allegations from which the court could infer agreement or concert of action). To the contrary the Court finds that the Amended Complaint does no more than "string together" events from the state court proceedings "without showing contacts between the alleged conspirators that could prove they had reached an understanding to violate [Plaintiff's] rights." *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (rejecting the complaint's allegations that the plaintiff's husband, his attorney, and doctors conspired to deprive the plaintiff of her constitutional rights during a proceeding to commit her to a state institution).[45] Plaintiffs' allegations to the contrary amount to

---

[45] *See also Crabtree By & Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) (affirming district court finding on Rule 12(b)(6) motion to dismiss that there was insufficient factual support in the complaint for plausible claim of conspiracy between attorneys and state court judge were the plaintiff relied on allegations of "judicial error, ex parte communications (the manner of occurrence and the substance of which were not alleged) [and]

no more than "[c]onjecture and speculation," which "alone are not sufficient to establish that [a] conspiracy existed." *World Wide Ass'n of Specialty Programs,* 450 F.3d at 114.

### 2. Negligence Claim

In Count VII of the Amended Complaint, Plaintiff alleges that the Law Firm Defendants "owed the Plaintiff a duty not to engage in conduct that would forcibly cause harm, including but not limited to duty to comply with professionally ethical standards and legal obligations." (Doc. 14 ¶ 104). Plaintiff alleges that the Law Firm Defendants "breached this duty by engaging in conduct that was negligent, reckless, and contrary to the rules of professional responsibility including but not limited to: A) Misrepresenting facts of Law to the Court, B) Filing frivolous and malicious pleadings, C) Abusing the Discovery and litigation procedures, D) Knowingly aiding and abetting an unlawful conduct." (*Id.* ¶ 105). The Law Firm Defendants argue that Plaintiff's negligence claim against them should be dismissed because they do not owe Plaintiff any duty of care.

"It is axiomatic that a negligence action requires that there be a duty owed from the defendant to the plaintiff," and that, "[w]hether a duty exists is a question of law for the courts to decide." *Romero v. Giant Stop-N-Go of N.M., Inc*., 2009-NMCA-059, ¶ 5, 146 N.M. 520, 522, 212 P.3d 408 (internal quotation marks and citation omitted). The Supreme Court of New Mexico has answered the question of whether a duty is owed by an attorney to an opposing party: "An attorney has no duty however to protect the interests of a non-client adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services and that the

---

adverse rulings," which in themselves did not "demonstrat[e] an agreement to commit the alleged improper actions"); *Snyder,* 836 F. Supp. at 23 & n. 5 (court holds, in a civil rights action brought by a father against the mother, the mother's attorney, and the child's therapist, that the complaint's allegations "string together events in a hotly contested custody battle" in an attempt to allege a conspiracy but, "at most, depict [the mother] as resorting to the courts and being on the winning side of a lawsuit").

attorney's undivided loyalty belongs to the client." *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.,* 106 N.M. 757, 761, 750 P.2d 118, 122 (1988). Nor do the Rules of Professional Conduct create a duty of care owed by the Law Firm Defendants. The Rules of Professional Conduct were "established to discipline attorneys. [They] [were] not intended to provide a foundation for civil liability." *Id.* at 762, 750 P.2d at 123; *see also Waterbury v. Nelson,* 2024-NMSC-020, ¶ 15, 557 P.3d 96, 101 (N.M. July 25, 2024) ("The Rules of Professional Conduct are not an independent basis for civil liability."). In short, because the Law Firm Defendants do not owe a duty of care to Plaintiff, the Amended Complaint's negligence claim against the Law Firm Defendants is legally insufficient and should be dismissed.

### 3. Fair Housing Act Claims

Plaintiff alleges that the Law Firm Defendants are directly liable for the HOA Defendant's violations of the Fair Housing Act, while the Resnick Law Firm is also vicarious liable under the statute for the Attorney Defendants' direct violations. *See* (Doc. 14 (Counts VIII and IX). Plaintiff alleges these claims are based on 24 CFR § 100.7, which provides for liability for discriminatory housing practices as follows:

> (a) Direct Liability.
>
> (1) A person is directly liable for:
>
> (i) The person's own conduct that results in a discriminatory housing practice.
>
> (ii) Failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person knew or should have known of the discriminatory conduct.
>
> (iii) Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. The power to take prompt action to correct and

> > end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party.
>
> (2) For purposes of determining liability under paragraphs (a)(1)(ii) and (iii) of this section, prompt action to correct and end the discriminatory housing practice may not include any action that penalizes or harms the aggrieved person, such as eviction of the aggrieved person.
>
> (b) Vicarious liability. A person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law.

24 C.F.R. § 100.7.

Plaintiff's allegations of direct and vicarious liability for discriminatory housing practices under these provisions are wholly conclusory, and fail to inform the Law Firm Defendants of what specific conduct is alleged to have violated which provisions of the regulation. Nor does it appear that any conduct by the Law Firm Defendants can be alleged here that would fall within the cited regulatory provisions. For example, Plaintiff alleges in Count VIII that his FHA claim is brought pursuant to subsection 24 C.F.R. § 100.7(a)(2). Subsection (a)(2) applies only if there is liability under either subsection (a)(1)(ii) or (a)(1)(iii). Liability under subsection (a)(1)(ii) attaches only if an employee or agent of the defendant engages in discriminatory housing practices. The HOA Defendants are not employees or agents of the Law Firm Defendants. In fact, under well-established law, the opposite is true, that is, as their attorneys, the Law Firm Defendants were the agents of the HOA Defendants. *See Marchman Enters., Inc. v. NCNB Tx. Nat'l. Bank*, 120 N.M. 74, 92, 898 P.2d 709, 727 (N.M. June 5, 1995). Therefore, the Law Firm Defendants cannot be held liable under subsection (a)(1)(ii).

Liability under subsection (a)(1)(iii) attaches where a third-party engages in a discriminatory housing practice, but only where the defendant "knew or should have known of the discriminatory conduct and had the power to correct it." Plaintiff alleges that the Law Firm Defendants knew about the discriminatory housing practices (presumably referring to the discriminatory housing practices of the HOA Defendants), and failed to take corrective action. But he ignores that the obligation to take corrective action only arises if the defendant has the "power to correct" the discriminatory housing practices, which in turn, "depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party." 24 C.F.R. § 100.7(a)(1)(iii). There are no factual allegations in the Amended Complaint to plausibly suggest that the Law Firm Defendants had either "control" over the HOA Defendants vis a vis the latter's alleged discriminatory housing practices, or a "legal responsibility" to prevent the HOA Defendants from engaging in the alleged discriminatory housing practices.

Second, Plaintiff's vicarious liability claim in Count IX cites 4 C.F.R. § 100.7(b), which by its terms applies only if the defendant's "agent or employee" engages in a discriminatory housing practice. The HOA Defendants are not "agents" or "employees" of any of the Law Firm Defendants. Therefore, the allegations in Count IX make sense only with respect to Resnick & Louis P.C. vis a vis the conduct of the individual attorneys, Rumac and Goodman. But Defendants Rumac and Goodman cannot be held liable for the discriminatory housing practices of the HOA Defendants as explained in connection with Count VIII. Therefore, there are no allegations of direct liability to which the vicarious liability allegations in Count IX can attach.

The Law Firm Defendants add to the above arguments by citing 42 U.S.C. § 3617, which they state is the statute under which Plaintiff's Fair Housing Act claims against them "presumably"

are "raised." (Doc. 39 at 11). That statute "makes it unlawful 'to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed' his or her rights under the FHA." *King v. Metcalf 56 Homes Ass'n, Inc.*, 385 F. Supp. 2d 1137, 1142 (D. Kan. 2005) (quoting 42 U.S.C. § 3617). "The elements of a § 3617 claim are that '(1) plaintiff is a member of a protected class under the Fair Housing Act; (2) plaintiff exercised or enjoyed a right protected by Sections 3603 through 3606, or aided or encouraged others in exercising or enjoying such rights; (3) intentional discrimination at least partially motivated defendants' conduct; and (4) defendants' conduct constituted coercion, intimidation, threat, or interference on account of having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606.'" *Id.* at 1142-43 (quoting *Zhu v. Countrywide Realty Co.*, 160 F. Supp. 2d 1210, 1233 (D. Kan. 2001)).

As has already been discussed, Plaintiff's allegations do not plausibly give rise to an inference that the Law Firm Defendants' conduct of which Plaintiff complains was motivated in whole or in part by a discriminatory animus against Plaintiff because he is disabled. In addition, the conduct of the Law Firm Defendants alleged in the Amended Complaint concerns their defense of the HOA Defendants in the state court proceedings, and Plaintiff has not plausibly alleged that any of that conduct amounts to "coercion, intimidation, threat, or interference." *See, e.g.,* 24 C.F.R. § 100.400(c) (describing types of conduct that would constitute "coercion, intimidation, threat, or interference"). The only potentially applicable type of conduct listed in 24 C.F.R. § 100.400(c) is "[r]etaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority." 24 C.F.R. § 100.400(c)(6). But Plaintiff's allegations concerning the Law Firm Defendants' conduct in the state court proceedings do not plausibly suggest that the Law Firm Defendants' conduct was "in retaliation" for Plaintiff bringing his Fair

Housing Act claims against the HOA Association. If the Law Firm Defendants' conduct were sufficient to allege a plausible claim of retaliation against them, then a similar claim could be made against any attorney simply by virtue of the attorney's defense of a client accused of violating the Fair Housing Act.

For all of the foregoing reasons, the Court recommends that Plaintiff's claims against the Law Firm Defendants be dismissed for failure to state a legally sufficient claim for relief. Furthermore, because Plaintiff has already had an opportunity to amend his complaint, the Court recommends that the dismissal be with prejudice. *See, e.g., Enciso v. Presbyterian Healthcare Servs.,* No. CV 21-323 JCH/JFR, 2021 WL 3206977, at *8-9 (D.N.M. July 29, 2021) (where plaintiff has already had one opportunity to amend his complaint and the amended complaint "appears to contain all of the facts Plaintiff can allege," court recommends that dismissal be with prejudice because granting leave to amend would be futile (citing *Brereton v. Bountiful City Corp*., 434 F.3d 1214, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.")), *report and recommendation adopted*, No. CV 21-323 JCH/JFR, 2021 WL 3772178 (D.N.M. Aug. 25, 2021).

## THE HOA DEFENDANTS' MOTION TO DISMISS FOR INSUFFICIENCY OF SERVICE OF PROCESS[46]

The HOA Defendants' motion to dismiss is filed pursuant to FED. R. CIV. P. 12(b)(5), and seeks dismissal for insufficiency of service of process. *See* (Doc. 44). "A Rule 12(b)(5) motion

[46] Plaintiff filed a motion seeking leave to file a surreply in opposition to the HOA Defendants' motion to dismiss for insufficiency of service of process. *See* (Doc. 62). The HOA Defendants oppose the motion, arguing that they did not raise any new arguments in their reply brief that would justify Plaintiff filing a surreply. *See* (Doc. 68). Simultaneous with filing the motion seeking leave to file the surreply, Plaintiff filed the surreply as a separate docket entry. *See* (Doc. 63). For this reason, in addition to arguing that the surreply was improper, the HOA Defendants' response to the motion for leave to file a surreply goes on to address Plaintiff's surreply arguments on their merits. The HOA Defendants are correct that Plaintiff violated the Local Rules by filing his surreply on the docket prior to obtaining leave of Court. Nevertheless, given Plaintiff's pro se status, the fact that the surreply is essentially one page in length,

'challenges the mode or lack of delivery of a summons and complaint.'" *Springer v. Seventh Jud. Dist. Ct*., 716 F. Supp. 3d 1139, 1149 (D.N.M. 2024) (quoting *Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC,* Case No. 22-2435-DDC-TJJ, 2023 WL 6123741, at *9 (D. Kan. Sept. 19, 2023) (internal quotation marks and citation omitted))). "When a defendant moves under Rule 12(b)(5) based on insufficient service of process, the burden shifts to plaintiff to make a prima facie showing that plaintiff properly served process. When considering whether plaintiff sufficiently served a defendant, a court may consider any 'affidavits and other documentary evidence' submitted by the parties and must resolve any 'factual doubts' in plaintiff's favor." *Id.* (quoting *Clear Spring Prop. & Cas. Co.*). "[W]hen a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Id.* (quoting *Pell v. Azar Nut Co., Inc*., 711 F.2d 949, 950 n.2 (10th Cir. 1983) (citing 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1354, at 586–87 (1969))).

Service of process in federal court is governed by Rule 4. The Rule provides that service on an individual may be accomplished by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individua's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

---

and the lack of any showing of prejudice to any party or the judicial process as a result of the improper filing, the Court does not find it necessary to strike Plaintiff's surreply. The Court therefore will grant Plaintiff's motion for leave to file a surreply, and will take into consideration any additional matters discussed in the surreply when addressing the HOA Defendants' motion to dismiss. The Court reiterates its previous warning to Plaintiff, however, concerning filing a surreply without leave of court having been granted.

> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e)(2).

The Rule provides that service may be effected on a corporation or other business entity "in the manner prescribed by Rule 4(e)(1) for serving an individual," which is to say, by following state law. *See* FED. R. CIV. P. 4(h)(1)(A); FED. R. CIV. P. 4(e)(1). Or, service may be accomplished "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." FED. R. CIV. P. 4(h)(1)(B).

**A. Service on the Individual HOA Defendants**

The Proofs of Service in the record indicate that Plaintiff attempted to serve each of the individual HOA Defendants (Clark, Cushman, Combs, Garcia, Wiseman, and Rodriguez) by certified mail. *See* (Doc. 18 at 2 (Cushman); Doc. 19 at 2 (Combs); Doc. 20 at 2-3 (Clark); Doc. 22 at 2 (Garcia); Doc. 23 at 2 (Rodriguez); Doc. 24 at 2 (Wiseman)). Plaintiff contends that, for all the individual HOA Defendants except Clark, service by certified mailing was valid because he received a signed receipt indicating that the certified mailing was received. The certified mailing receipt for Clark, however, was returned to Plaintiff unsigned with a "return to sender; unable to forward" sticker on it. (Doc. 20 at 3). As a result, on August 29, 2025, and September 9, 2025, Plaintiff filed duplicate motions for alternative service including service by publication as to Defendant Clark, in which he stated that, in addition to the certified mailing that was addressed to Clark's home address (10816 Slumber Ct. NW, Albuquerque, NM 87114) but returned to sender without signature, Plaintiff had a "family friend attempt to serve [Clark] at his home, but he refused to answer his door." (Docs. 31, 37). The Court denied the duplicate motions on September 24,

2025, because Plaintiff had not shown that he had exhausted the entire hierarchy of mechanisms under NMRA, RULE 1-004(F) before seeking service by publication, as required by New Mexico law. *See* (Doc. 50).

**1. Service on Defendants Cushman, Combs, Garcia, Wiseman, and Rodriguez**

Certified mailing is not one of the approved methods in Rule 4(e)(2) for service of process on an individual. Therefore, to assess whether Plaintiff's attempted service of process on each of the individual HOA Defendants other than Clark was valid, the Court must look to Rule 4(e)(1), which incorporates, for purposes of the present case, New Mexico's rules for service of process. Under New Mexico law, process must "be served in a manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." NMRA RULE 1-004(E)(1). Available methods of service on an individual include mail or commercial courier service. *See* NMRA, RULE 1-004(F)(1)(b). In this respect, "New Mexico allows for 'a much-simplified method of service by mail[,]' one that neither requires that the defendant voluntarily choose to accept service nor mandates that service 'be at the home address or usual place of abode of the defendant[.]'" *Sugar v. Tackett*, No. 1:20-CV-00331-KWR-LF, 2021 WL 3292615, at *4 (D.N.M. Aug. 2, 2021) (quoting NMRA RULE 1-004 comm. commentary). "However, the mere act of sending a summons and a complaint by certified mail and requesting that the receiving party sign a receipt is not sufficient to effect constitutionally adequate service. [citation omitted]. Rule 1-004 itself mandates that service by mail must comply with two requirements: (1) that the envelope containing the summons and the complaint is 'addressed to the named defendant[,]' and (2) that 'the defendant or a person authorized by appointment, by law or by this rule to accept service of process upon the defendant signs a receipt for the envelope or package containing the summons and complaint[.]'"

*Id.* (quoting NMRA RULE 1-004(E)(3)). As discussed below, the signed certified mailing receipts for Defendants Cushman, Combs, Garcia, Rodriguez, and Wiseman do not comply with either of the aforementioned requirements of Rule 1-004(E)(3).

First, the certified mailing receipts for those defendants are addressed to either the HOA or HOAMCO, without reference to the name of the individual HOA of HOAMCO Defendant identified in the Proof of Service filed on the docket with the receipt. *See* (Doc. 18 at 3; Doc. 19 at 3; Doc. 22 at 3; Doc. 23 at 3; Doc. 24 at 3). Rule 1-004(E) requires that "the envelope containing the summons and the complaint" be "addressed *to the named defendant*"; the receipts indicate that the mailings were addressed to the HOA and to HOAMCO, not the individual defendants by name.[47]

Second, in the space on the return receipt cards where the recipient is to sign his or her name to acknowledge receipt, there is an illegible signature. Under the signature is a blank box in which the recipient was supposed to have printed his or her name. Without any printed name, the Court is unable to make out the signatures on the mailing receipts. But it is highly doubtful they are the signatures of the individual HOA/HOAMCO defendants. To begin with, as noted, those individuals' names were not on the envelope, as indicated by the mailing receipt. Moreover, Plaintiff states that the address on the certified mailings (8700 Education PL, NW, Albuquerque, New Mexico, 87114) was the address of both the HOA and HOAMCO, and it is unknown whether any of the individual defendants were to be found at that address. Finally, the signature on all five of the receipts appears to be of the same person, rather than of five different individuals.

[47] The summonses issued to each of the individual HOA/HOAMCO Defendants suffer from the same defect, but that defect goes to the form of service. *See* note 50, *infra.*

The HOA Defendants argue that: "[a]ll five of the[] Proofs of Service are defective because not one of the named Defendants was personally served. The address stated on the Proofs of Service is [a] business address and none of these five (5) Defendants reside at said address. Plaintiff delivered a package to this address and is attempting to assert that this sufficient service on the individual Defendants who do not reside there." (Doc. 44 at 3). Plaintiff was not required, however, to personally serve the five individual HOA/HOAMCO Defendants. Nor was he required to use their home addresses for the certified mailings. The reasons Plaintiffs' attempted service on these five individuals was invalid have to do not with those facts, but with the matters discussed above.

Plaintiff, on the other hand, argues that the HOA Defendants "have not shown that the individuals … served were not authorized to accept service on their behalf." (Doc. 52). But it is Plaintiff's burden to demonstrate that service was valid on each of the individual HOA/HOAMCO Defendants, not the other way around. *Fed. Dep. Ins. Corp. v. Oaklawn Apartments*, 959, F.2d 170, 174 (10th Cir. 1992); *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."). Furthermore, if Plaintiff is trying to say that service was valid because the receipts were signed by some person other than each of the individual HOA/HOAMCO Defendants with authority by appointment, by law, or by Rule 1-004, to accept service of process upon them, then it is incumbent upon Plaintiff to: (1) prove the identity of the person who signed the return receipt card, *see, e.g., Sugar*, 2021 WL 3292615, at *4, 5 (stating that "[t]he markings on the signature line and in the space for the recipient to print his or her name are meaningless on the current record," as the court "has no way of knowing what the [partially legible markings consisting of] the notation 'C/U 6079'—assuming that is, indeed, what it says—is intended to signify or whom it purports to identify"); and (2) prove the source of that person's authorization to sign on each

individual HOA/HOAMCO Defendant's behalf, *see id.* at *5, n.6 (plaintiff's "argument that the UPS Store was an authorized agent" for purposes of accepting service of process on the individual defendant was "without merit," citing case law for the proposition that "authority to accept mail for a defendant does not confer authority to accept service on that defendant's behalf"). Plaintiff argues that the Court should "excuse" any "minor procedural defects" that may have occurred in serving the HOA Defendants. (Doc. 52). But the rules laid out in NMRA RULE 1-004 "'derive from constitutional due process requirements' and 'must be satisfied to validly serve a person[.]'" *Sugar*, 2021 WL 3292615, at *4 (quoting NMRA RULE 1-004 comm. commentary and citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314–315 (1950) (stating that adequate notice of a lawsuit is "[a]n elementary and fundamental requirement of due process" and that "when notice is a person's due, process which is a mere gesture is not due process")).

Lastly, although the HOA Defendants do not raise the issue and therefore arguably they have waived it, service on the individual HOA/HOAMCO Defendants (other than Clark) was defective because it appears from the Proofs of Service that Plaintiff sent the certified mailings himself, when, under Rule 4(c), a party is ineligible to effect service on his or her own behalf. *See* FED. R. CIV. P. 4(c)(2) ("Any person who is at least 18 years old *and not a party* may serve a summons and complaint.") (emphasis added). New Mexico has the same rule. *See* NMRA RULE 1-004(D)(1) ("if the process to be served is a summons and complaint, petition or other paper, service may be made by any person who is over the age of eighteen (18) years and not a party to the action."). As the Tenth Circuit has explained, "[e]ven when service is effected by use of the mail, only a nonparty can place the summons and complaint in the mail. Although one could question the wisdom of this requirement, [citation omitted], the rule contains no mailing exception to the nonparty requirement for service. And the limited history surrounding the relevant rules

provisions confirms this reading." *Constien v. United States*, 628 F.3d 1207, 1213–14 (10th Cir. 2010); *see Shepard v. U.S. Dep't of Veterans Affairs,* 819 F. App'x 622, 623 (10th Cir. 2020); *Venerable v. USD 500 Kansas City, Kansas,* No. 2:25-CV-02271-JAR-ADM, 2026 WL 1558156, at *4 (D. Kan. June 2, 2026). Similarly, there is no exception in NMRA RULE 1-004 to the non-party requirement for when service is effected by mail.[48]

**2. Service on Defendant Clark**

As the HOA Defendants state, by his motions for alternative service, Plaintiff has acknowledged that he has not served Defendant Clark. They also note that the summons submitted

[48] Because Plaintiff cannot serve the summonses and Amended Complaint himself, he can have a family friend place the service papers in the mail and receive the return receipt cards. But Plaintiff is cautioned to use a mailing address that will ensure that any receipts for those mailings will be signed for by the defendant to whom the service papers are directed (or another individual only if Plaintiff can prove that other person is authorized to accept service on behalf of the defendant in question). The uncertainty whether any individual Defendant will accept the certified mailings by signing and returning the receipt may counsel Plaintiff seek to serve those individuals using a different method than certified mailing. One option is to move the Court for an order that service be completed by the United States Marshall Service ("USMS"). *See* FED. R. CIV. P. 4(c)(3); *see also Holmes v. United States*, No. CIV-06-796R, 2008 WL 111320, at *3 (W.D. Okla. Jan. 8, 2008). The USMS charges a fee for service of documents. *See* 28 C.F.R. § 0.114 (setting forth the fee schedule). "Whether to grant such a motion by a plaintiff not proceeding under 28 U.S.C. § 1915, like [Plaintiff here], is within the Court's discretion." *Pinson v. Fed. Bureau of Prisons*, No. CV 21-0185 KWR/DLM, 2024 WL 3026566, at *3 (D.N.M. June 17, 2024) (citing FED. R. CIV. P. 4(c)(2)). "Additionally, Rule 4(d) provides an alternate method whereby [the] plaintiff may notify a defendant of the commencement of an action and request that the defendant waive service." *Bernard v. Husky Truck Stop,* No. 93–2241–JWL, 1994 WL 171732, at *2 (D. Kan. Apr. 20, 1994); *see* FED. R. CIV. P. 4(d)(1). If the defendant "fails, without good cause, to sign and return a waiver requested by a plaintiff … , the court *must* impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." FED. R. CIV. P. 4(d)(2). Plaintiff should consult Rule 4(d)(1) to learn how to go about seeking a waiver, and, if he proceeds in this manner, he is reminded to file on the docket any executed waiver forms that are returned to him in lieu of filing a proof of service. *See* FED. R. CIV. P. 4(d)(1), (d)(4). If deciding whether to seek a waiver, Plaintiff should be aware that Rule 4(d)(1)(F) gives Defendants a minimum of thirty days from when the waiver request is sent to return an executed waiver, which means Plaintiff would have to wait at least that long before knowing whether any defendant waived service. After the thirty-day period expired, Plaintiff would need to initiate service on any defendant who did not return the waiver form. And he would then have to effect service on those defendants under Rule 4(e) or 4(h) before any deadline imposed by the Court for completing service were to expire. For example, if the Court were to grant Plaintiff an additional 45 days to effect service, and he immediately mailed waiver forms to each defendant and then waited the full thirty days to see which defendants returned the waiver forms, he would be left with only about two weeks to effect service on any defendant who failed to return an executed waiver form. Finally, Plaintiff should note that the federal rules are silent regarding substituted and alternative service, and that New Mexico law only permits alternative methods of service after a plaintiff has exhausted all other available methods of service specified in NMRA RULE 1-004. *See* (Doc. 50); *see also Ham v. CarMax Auto Superstores, Inc.,* No. 1:23-CV-01057-DHU-JFR, 2024 WL 2091862, at *3 (D.N.M. May 9, 2024) (holding that Rule 1-004(G)(2)'s alternative method of service of process was not applicable because the defendant's "registered agent was 'available' to receive service of process and existed for that exact purpose, but Plaintiff did not serve Defendant's registered agent").

by Plaintiff with his Proof of Service is not addressed to Defendant Clark by name but is instead addressed to "Former HOA Director." The requirements for a summons are set out in Rule 4(a). One of those requirements is that the summons "be directed to the defendant," FED. R. CIV. P. (a)(1)(B),[49] which means that Plaintiff should have written Clark's name in the blank space following the pre-printed word "To" on the summons form.[50] This defect, however, is in the form of the summons, which is properly addressed through a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(4). The HOA Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(5).[51] Thus, the issue isn't presently before the Court. "Plaintiff is counseled, however, that any future summons[es] must comply with the requirements of Rule 4(a), specifically it must name the parties [in the case caption] and be directed to the defendant[]" for whom the summons is intended. *Kippen v. Pack*, No. 1:10-CV-119 TS, 2010 WL 3835221, at *2 (D. Utah Sept. 29, 2010).[52]

---

[49] "While Rule 4(a) requires that a summons be directed to defendant, it sets forth no requirement regarding the defendant's address." *Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1093 (D. Kan. 2007) (citation omitted). A correct address for where the summons is to be served facilitates service, but an incorrect address will not render the summons insufficient. *Id.*

[50] The summonses submitted with Plaintiff's Proofs of Service for the other individual HOA/HOAMO Defendants are defective in the same manner, except that, for those summonses, Plaintiff filled in the "To" line with either the name of the HOA or HOAMCO, and included the name of the individual defendant to whom the summons is directed only in the case caption (omitting all the other defendants' names from the caption). In other words, when he filled out the summons forms, Plaintiff did the reverse of what he should have done. He should have written the name of the defendant to whom the summons is directed in the first line of the summons after the pre-printed word "To," and captioned the summons with the full case caption, which is the same for all court documents and includes the names of all Defendants, or else the short-hand version "Los Suenos De Albuquerque Homeowners Association, et al." (the name of the defendant first listed in the caption of the Amended Complaint with the designation "et al." indicating additional defendants' names are left off).

[51] "A Rule 12(b)(4) motion constitutes an objection to the form of process or the content of the summons rather than the method of its delivery. A Rule 12(b)(5) motion ... challenges the mode or lack of delivery of a summons and complaint." *Williams v. Pub. Serv. Co. of N.M.*, No. CIV-05-0660JBLAM, 2005 WL 3662906, at *2 (D.N.M. Nov. 7, 2005) (internal quotation marks and citations omitted).

[52] To be fair, the Clerk issued the summonses in question notwithstanding that forms may not have been completed in an entirely correct manner. *See* FED. R. CIV. P. 4(b) ("On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal," and "[*i*]*f the summons is properly completed*, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." (emphasis added)).

The HOA Defendants also argue that the Proof of Service for Defendant Clark—which indicates that the summons is being returned unexecuted because "Defendant Refused"—is deficient because it is signed by Plaintiff. The HOA Defendants are correct that Plaintiff may not serve the summons on Defendant Clark because, as previously noted, Plaintiff is a party. *See* FED. R. CIV. P. 4(c)(2). But Plaintiff seems to be aware of that rule at least insofar as his attempted personal service on Clark is concerned, as his two motions for alternative service indicate that he had a "family friend" attempt to serve Defendant Clark at his home. Therefore, the defect pointed out by the HOA Defendants is likely not in the manner in which service was attempted, but only in the form of the Proof of Service, which should have been an affidavit executed by the "family friend" rather than Plaintiff.[53] But an invalid proof of service "does not affect the validity of service," and "[t]he court may permit proof of service to be amended." FED. R. CIV. P. 4(l)(3). And in this situation, the "Proof of Service" in question need not be amended because it was not submitted to prove the validity of service, since, according to Plaintiff, the server was unable to effect service. There is no indication in the record that Plaintiff has made any further attempts to serve Clark following the rejected attempt at personal service, despite the Court's order denying Plaintiff's two motions for alternative service and direction to Plaintiff in that order to attempt to serve Clark using methods other than the requested publication method. Accordingly, the Court finds that Defendant Clark, like the other individual HOA/HOAMCO Defendants, has not been served.

---

[53] *See* FED. R. CIV. P. 4(l)(1) ("Unless service is waived, proof of service must be made to the court … by the *server's* affidavit." (emphasis added)).

### B. Service on the Entity HOA Defendants

The Proofs of Service in the record indicate that, like the individual HOA Defendants, Plaintiff attempted to serve the entity HOA Defendants by certified mail. *See* (Doc. 17 at 2 (HOA)) (Doc. 21 at 2 (HOAMCO)). Service on a business entity by certified mail is authorized under New Mexico law so long as it complies with NMRA RULE 1-004(E)(3). *See* NMRA RULE 1-004(G)(3).[54] The certified mailings to the entity HOA Defendants, however, failed to effect service for reasons similar to those previously discussed with regard to the certified mailings to the individual HOA Defendants.

First, Plaintiff put the service papers in the mail himself, which, as previously discussed, is not permitted under either Rule 4(c)(2) or NMRA RULE 1-004(D)(1).

Second, the signature on the returned mailing receipts appears to be of the same individual who signed the receipts for the mailings intended for the individual HOA Defendants, which signature is illegible and there is no printed name beneath it. (Doc. 17 at 3; Doc. 21 at 3). Plaintiff argues that the "identity of the person who signed the return receipt is not dispositive, what matters [is] whether service was reasonably calculated to give notice." (Doc. 63). But the identity of the person who signed the return matters for precisely the reason Plaintiff has identified; the Court cannot determine whether service was reasonable and likely to provide notice to the HOA and HOAMCO without knowing who signed the receipts. In addition, without knowing the identity of

[54] The Court notes that the federal rule also has a mailing component for service on a corporation or other business entity, but it is in addition to personal delivery and only applies if the person personally served is an agent authorized by statute to receive service of process, in which case Rule 4(h)(1)(B) requires the summons and complaint also be mailed to the corporate defendant. FED. R. CIV. P. 4(h)(1)(B); *see, e.g., Towner v. USAA Fed. Sav. Bank*, No. 2:14-CV-148-DN-DBP, 2014 WL 2608517, at *3 (D. Utah June 11, 2014) ("Where a 'Plaintiff merely mail[s] service to Defendant's business address' rather than 'serving an officer or registered agent of Defendant' such service is 'not sufficient' under Fed. R. Civ. P. 4(h)(1)(B)." (citation omitted)). Because Plaintiff did not attempt personal delivery as required by Rule 4(h)(1)(B), the Court only considers whether Plaintiff's certified mailings satisfied NMRA RULE 1-004(E)(3).

the person who signed the receipts, the Court cannot determine whether that person satisfies the requirement that the person who signed for the service papers was "authorized by appointment, by law or by this rule [i.e., by NMRA RULE 1-004] to accept service of process upon" the HOA and HOAMCO. *See* NMRA RULE 1-004(E)(3).

The HOA Defendants argue that service on the HOA and HOAMCO was insufficient because Plaintiff did not send the certified mailing to the authorized agent who the HOA and HOAMCO have assigned to accept service on their behalf, identified in the HOA Defendants' motion as Nigel Burgess, located at 8700A Education Pl NW, Albuquerque, NM 87114. *See* (Doc. 44 at 4 (citing Exhibit A (Doc. 44 at 7-8) (HOA), and Exhibit B (Doc. 44 at 9-10) (HOAMCO)). Serving the entity HOA Defendants' authorized agent is definitely the surest way to remove any doubts about whether service was effective. But in addition to service being effective if the certified mailing receipt is signed by a person authorized by appointment to receive service on behalf of the HOA Defendants, service also would be effective if the certified mailing receipt is signed by a person authorized "*by this rule* [i.e., Rule 1-004] to accept service of process upon the defendant." NMRA RULE 1-004(E)(3) (emphasis added). And subsection (G)(1)(a) of Rule 1-004 provides that, in addition to an appointed agent such as Mr. Burgess, a party may serve an officer, managing agent, or general agent of the company. NMRA RULE 1-004(G)(1)(a). But while Plaintiff has the option of serving one of those other individuals, going that route rather than serving Mr. Burgess could raise doubts about whether the service is effective because of ambiguity inherent in the terms "officer, managing agent, or general agent." *See, e.g., Ham*, 2024 WL 2091862, at *3 (stating that "a managing agent in the Rule 1-004(G)(1)(a) context means one who is authorized to transact all business of a particular kind at a particular place and must be vested

with powers of discretion rather than being under direct superior control" (internal quotation marks and citation omitted)).

Plaintiff bears the burden of proving that the person who signed the mailing receipt qualifies as an officer, managing agent, or general agent of the HOA and HOAMCO. And contrary to Plaintiff's argument, that burden is not satisfied by the mere fact that an unidentified person was in a position to sign for the certified mailings by virtue of that person being present at the business address of those two entities when the certified mailings were delivered there. *See, e.g., Quiroz v. DCT Enters. of N.M., LLC*, No. 2:21-cv-1197, 2023 WL 1765383, at *2 (D.N.M. Feb. 3, 2023) (holding that service on a pizza store manager was insufficient where the record was unclear whether he "ha[d] any qualifying role in managing Defendant, or whether he [was] merely a 'manager' in the sense of being the 'shift-lead,' or the most senior employee then on-site"); *Joe Hand Promotions, Inc. v. Serna*, No. 1:17-cv-928-JCH-SCY, 2018 WL 4491171, at *3 (D.N.M. Sept. 19, 2018) (plaintiff failed to provide sufficient evidence regarding the extent of "bar manager's management power such that the Court could conclude that individual qualified as a "manager" with authority to accept service of process for the defendant). Because the record does not reveal the identity of the person who signed the certified mailing receipts for the HOA and HOAMCO, let alone show that the unidentified person is a qualified officer, managing agent, or general agent of both the HOA and HOAMCO, Plaintiff has not met his burden of proving that his certified mailings to the HOA and HOAMCO were sufficient to effect service of process over those Defendants.

### C. Whether Dismissal for Insufficiency of Service Is Proper

Plaintiff argues that he has "substantially complied" with the service rules and that the Court should overlook any "technical defect" in service because the HOA Defendants received

actual notice and responded by filing the present motion. However, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit[.]"). Thus, actual notice to the HOA Defendants is not sufficient. *Id.* While the HOA Defendants could have waived formal service when they received actual notice and then appeared in this case through their attorney representative, they have "not done so; instead, [they] ha[ve] challenged service and Plaintiff has failed [his] requisite burden. That is where the analysis ends." *Campos v. Phillip Morris USA, Inc.*, No. 2:23-cv-3794-AB (JDEx), 2023 WL 8883328, at *2 (C.D. Cal. June 27, 2023).

Having found that service on the HOA Defendants was insufficient, the Court is nonetheless not persuaded by the HOA Defendants' arguments for dismissal of Plaintiffs' claims against them based on Plaintiff's failure to serve them with process. Upon finding that previous attempts at service of process are inadequate, the Court can either dismiss the complaint or quash the insufficient service and give the plaintiff an opportunity to re-serve the defendant. *Pell v. Azar Nut Co., Inc.*, 711 F.2d 949, 950 n. 2 (10th Cir. 1983); *see* FED. R. CIV. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). The Court may choose the latter option of ordering that service be made within a specified time "with or without a showing of good cause." *Ramirez v. Wilson*, No. CIV 00-1275 LCS, 2001 WL 37125214, at *1 (D.N.M. Apr. 4, 2001) (citing *Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000)). Dismissal can be the proper course of action if it appears unlikely that sufficient service can or will be instituted. *Id.* But quashing insufficient

service is generally preferred when the defendant has not been prejudiced, *id.,* and "there is a reasonable prospect that the defendant can be properly served with sufficient process in a second attempt." *Paschall v. Frietz*, No. 20-CV-221 WJ/GBW, 2020 WL 2849469, at *2 (D.N.M. June 2, 2020).

Relevant factors for a court to consider when deciding whether to grant a permissive extension in a situation where, like here, the plaintiff has not shown good cause for the failure to serve and therefore is not automatically entitled to an extension of the service deadline under Rule 4(m), include whether a plaintiff is proceeding pro se, whether the defendant had actual notice of the lawsuit, the danger of prejudice to the defendant, the length of the delay, and whether the applicable statute of limitations would bar a re-filed action. *Venerable v. USD 500 Kansas City, Kansas*, No. 2:25-CV-02271-JAR-ADM, 2026 WL 1558156, at *4–5 (D. Kan. June 2, 2026) (citations omitted). These factors support granting a permissive extension in this case. First, pro se litigants like Plaintiff "are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings. Although district courts do not need to provide detailed guidance to pro se litigants, they should at least supply minimal notice of the consequences of not complying with procedural rules." *Martinez-Jones v. Dulce Indep. Schs.*, No. CIV 07-0703 JB/WDS, 2008 WL 2229457, at *6 (D.N.M. Mar. 14, 2008) (internal quotation marks and citation omitted). Next, the HOA Defendants received notice of the lawsuit at most a little over two months after it was filed, as shown by their appearance in the action and filing of the present motion. Although the case was filed more than one year ago, it has not yet progressed beyond the pleading stage because the Court found good cause to delay entering a Rule 16 scheduling order due to both the Law Firm Defendants and the HOA Defendants having filed motions to dismiss. Plaintiff's defective service obviously has contributed to the substantial delay that has occurred in the case

progressing over the past year. But it is not the sole cause of that delay; the Court's docket, preventing a quick ruling on the pending motions, also is partially to blame. Finally, nothing in the record indicates that the HOA Defendants would be prejudiced by allowing Plaintiff one final opportunity to effect proper service on the HOA Defendants. *See, e.g., Bray v. Idaho Dep't of Juv. Corr.*, No. 4:21-CV-00458-DCN, 2022 WL 3227638, at *5 (D. Idaho Aug. 9, 2022) ("Although Defendants would prefer to avoid litigation on the merits by having the claim dismissed, Defendants' loss of a quick victory is not sufficiently prejudicial to deny the plaintiff relief." (quoting *Vertin v. Goddard*, No. CV–11–01167–PHX–GMS, 2013 WL 1932810, at *3 (D. Ariz. May 8, 2013) (cleaned up)). For these reasons, and consistent with the tenet that courts prefer to decide cases on their merits rather than technicalities, *see, e.g., Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982), the Court does not recommend dismissal of Plaintiff's claims against the HOA Defendants based on insufficient service of process.[55]

That said, the Court is mindful that Plaintiff was directed almost a year ago to make additional efforts to serve Defendant Clark. Despite the guidance given by the Court in its order denying the two motions for alternative service, the record does not reflect that Plaintiff made any new attempt to serve Clark. The Court therefore recommends that Plaintiff be forewarned that this will be his final opportunity to properly serve the HOA Defendants. If Plaintiff is given a final opportunity to serve the HOA Defendants as a result of this recommendation, the Court cautions him to be familiar and diligent in effectuating service on those Defendants consistent with Rule 4 of the Federal Rules of Civil Procedure.

---

[55] The Court notes that the HOA Defendants appear to concede that it would not be appropriate to dismiss Plaintiff's claims on the basis of insufficient service. *See* (Doc. 44 at 5 (stating that the HOA Defendants "recognize that Plaintiff still has time to effectuate service of the Amended Complaint")).

## V. Conclusion

**ACCORDINGLY,** for the foregoing reasons,

1. Plaintiff's Motion For An Oral Argument In Person Hearing, **Doc. 51**, is **DENIED**;

2. The HOA Defendants' Motion To Appear Telephonically Or Virtually For An Oral Argument Hearing, **Doc. 61**, is found **MOOT**; and

3. Plaintiff's Motion For Leave To File Surreply In Opposition To Defendants['] Motion To Dismiss For Improper Service, **Doc. 62** is **GRANTED.**

**FURTHERMORE, IT IS RECOMMENDED THAT:**

4. The HOA Defendants' Motion To Join The [Law Firm Defendants'] Motion To Dismiss, **Doc. 46**, be **DENIED**;

5. The Law Firm Defendants' Motion To Dismiss, **Doc. 39**, be **GRANTED**, pursuant to **FED. R. CIV. P. 12(b)(6)**, and Plaintiff's claims in the Amended Complaint (Doc. 14) against Defendants Resnick & Louis P.C. Law Firm, Michael S. Ruman, and Justin D. Goodman be **DISMISSED WITH PREJUDICE**; and

6. The HOA Defendants' Motion To Dismiss For Insufficiency of Service of Process, **Doc. 44**, be **GRANTED IN PART AND DENIED IN PART**, with the Court **GRANTING** the request to **QUASH** the Proofs of Service for Defendants Los Suenos De Albuquerque Homeowners Association, Kristen Cushman, Terry Combs, the Homeowners Association Management Company ("HOAMCO"), Angelina Garcia, Gary Wiseman, and Justin Rodriguez, and **DENYING** the request to dismiss Plaintiff's claims in the Amended Complaint (Doc. 14) against the HOA Defendants for insufficiency of service of process.

The Court **FURTHER RECOMMENDS THAT**:

7. Within **forty-five days** from entry of a final order on the HOA Defendants' Motion To Dismiss For Insufficiency of Service of Process, Doc. 44, if said final order finds that service on any of the HOA Defendants was insufficient, Plaintiff be required to effect proper service of a summons and the Amended Complaint (Doc. 14) on whichever among Defendants Los Suenos De Albuquerque Homeowners Association, James Clark, Kristen Cushman, Terry Combs, the Homeowners Association Management Company ("HOAMCO"), Angelina Garcia, Gary Wiseman, and Justin Rodriguez, the final order finds service to be legally insufficient, and to file on the docket legally sufficient proofs of service for each of the HOA Defendants subsequently served within **seven (7)** days of the expiration of the forty-five day period.

**SO ORDERED THIS 28th day of August, 2026**.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen (14) day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**